[No. 24962. *En Banc.* July 17, 1934.]

ROBERT J. KEARNS, *Respondent*, v. PENN MUTUAL LIFE
INSURANCE COMPANY OF PHILADELPHIA, *Appellant.*[1]

[1]Reported in 34 P. (2d) 888.

*Graves, Kizer & Graves,* for appellant.

*O. C. Moore,* for respondent.

MILLARD, J.—The defendant insurance company issued two life insurance policies, a twenty-pay limited life policy in 1916 and a fourteen-year endowment policy in 1921, to Robert J. Kearns. Under the terms of each of the policies, which differ in no particular material to this action, the defendant insurer was obligated to pay a monthly income to the plaintiff insured in the event that he became totally and permanently disabled. The pertinent provisions of the two insurance contracts are as follows:

"If after one year's premium shall have been paid on this Policy and before default in the payment of any subsequent premium the insured shall furnish to the Company due proof that, before attaining the age of sixty, he has become wholly disabled by bodily injury or disease so that he is and thereby will be permanently and continuously unable to engage in any occupation whatever for remuneration or profit, and that such disability has existed continuously for not less than sixty days prior to the furnishing of proof, thereupon the Company will grant the following benefits:

"a. WAIVER OF PREMIUM.—The Company, by endorsement hereon, shall waive the payment of the premiums which thereafter may become due under this Policy during the continuance of the said total disability of the insured. In making any settlement under this Policy the Company shall not deduct any part of the premiums so waived, and the Non-Forfeiture values of this Policy shall increase from year to year in the same manner as though any premium waived under this provision had been paid in cash;

"b. ANNUITY PAYMENT.—Furthermore, the Company will pay to the insured a monthly sum equal to one one-hundred-and-twentieth of the face of this Policy, the first monthly payment to be made six months after receipt of due proof of the said total disability accompanied by this Policy for endorsement,

and subsequent payments monthly thereafter during the continuance of the said total disability of the insured prior to the maturity of this Policy. The Company will admit the age of the insured when furnished with satisfactory evidence of the date of birth and reserves the right to require such proof of date of birth at the time proof of disability is furnished. The amount of this Policy payable at maturity either as an endowment or as a death claim shall not be reduced by any payments made under this disability provision.''

On July 13, 1932, Kearns, then fifty-seven years old, suffered a "stroke." Defendant stipulated that, from that time, Kearns has been totally and continuously disabled within the meaning of the above-quoted provision of the policies. The insured did not realize the seriousness of his condition. The court's finding, amply sustained by the evidence, is to the effect that, for several months subsequent to July 13, 1932, Kearns' condition was such that he was incapable of understanding the terms and conditions of his insurance policies.

On December 12, 1932, finding himself unable to continue the practice of his profession—the insured is a physician and surgeon—Kearns furnished to the insurer proof of his disability and claimed the benefit of the policy provision quoted above. The claim of disability was allowed, annuity payments to begin six months after the receipt of proof of disability. The insured rejected the allowance, insisting that the liability to pay accrued at the moment of the disabling injury and was not postponed by delay in claiming and proving disability. The insured further insisted that the provisions that "the first monthly payment to be made six months after receipt of due proof of the said total disability'' was invalid.

An action was commenced by the insured to recover the annuity payments under both policies from July

13, 1932, the date the insured became disabled. Trial of the action to the court resulted in judgment for plaintiff in the amount for which he prayed. The defendant has appealed.

■ Counsel for appellant contend that the insurer's liability for the annuity payments did not accrue upon the occurrence of the disabling injury. It is insisted that the furnishing to the insurer of proof of the disability is a condition precedent to liability of the insurer to pay disability benefits under the provisions of the policies in question.

"The obligation of the company does not rest upon the existence of the disability; but it is the receipt by the company of *proof* of the disability which is definitely made a condition precedent to an assumption by it of payment . . ." *Bergholm v. Peoria Life Ins. Co.*, 284 U. S. 489, 52 S. Ct. 230.

So far as is material here, the total disability clause reads as follows:

"If . . . the insured shall furnish to the Company due proof that . . . he has become wholly disabled by bodily injury or disease . . . the Company will grant the following benefits: . . .

"b. . . . the Company will pay to the insured each month One Hundred Dollars, . . . the first monthly payment to be made six months after receipt of due proof of the said total disability, . . . and subsequent payments monthly thereafter during the continuance of the said total disability of the insured . . ."

In *Wick v. Western Union Life Ins. Co.*, 104 Wash. 129, 175 Pac. 953, the insurance policy contained a total disability provision reading as follows:

"If the insured, . . . shall furnish due proof that he has, before default in the payment of any premium, become wholly disabled by bodily injury or disease . . . the company will pay for said insured all premiums which shall become due . . ."

In *Jones v. New York Life Ins. Co.,* 158 Wash. 12, 290 Pac. 333, the two-thousand-dollar life endowment policy issued to the plaintiff contained the following disability benefit provision:

"Whenever the company receives due proof, before default in the payment of premium, that the insured, . . . has become wholly disabled by bodily injury or disease, . . . then . . . commencing with the anniversary of the policy next succeeding the receipt of such proof, the company will on each anniversary waive payment of the premium for the ensuing insurance year, . . . One year after the anniversary of the policy next succeeding the receipt of such proof, the company will pay the insured a sum equal to one-tenth of the face of the policy, and a like sum on each anniversary thereafter during the continued disability of the insured . . . ."

In *Bergholm v. Peoria Life Ins. Co.,* 284 U. S. 489, 52 S. Ct. 230, the insurance policy contained the following income disability provision:

"Upon receipt by the Company of satisfactory proof that the Insured is totally and permanently disabled as hereinafter defined the Company will

"1. Pay for the Insured all premiums becoming due hereon after the receipt of such proof and during the continuance of the total and permanent disability of the Insured and will also

"2. Pay to the Insured a Monthly Income for life of 1% of this Policy; The first payment of such income to be paid immediately upon receipt of such proof . . . ."

The provision in the insurance policy in the case at bar for payment of an annuity to the insured and waiver of payment of all insurance premiums in the event that the insured became totally and permanently disabled, is identical in effect with the disability indemnity provision in the cases cited.

In the *Wick* case, an *En Banc* decision which has never been overruled or modified, the insured was dis-

abled while the policy was still in force, but no proof was furnished until after the policy had lapsed for non-payment of premiums. Recovery was denied, on the ground that the insured was bound by the disability indemnity provision requiring due proof of total and permanent disability before default in the payment of premium; that such requirement was a condition precedent to a recovery on the policy.

In *Bergholm v. Peoria Life Ins. Co.,* 284 U. S. 489, 52 S. Ct. 230, the plaintiff sought recovery of the face of a life insurance policy in which she was the named beneficiary, and certain sums for disability benefits alleged to have accrued prior to the death of the insured. In that case, as in the *Wick* case, the insured became totally disabled before there was a default in the payment of premiums, but he failed to furnish proof of such disability, whereupon the insurance company cancelled the policy. Affirming the judgment of the circuit court of appeals (*Peoria Life Ins. Co. v. Bergholm,* 50 Fed. (2d) 67), reversing a recovery in favor of the plaintiff beneficiary, the supreme court of the United States distinguished the case of *Minnesota Mutual Life Ins. Co. v. Marshall,* 29 Fed. (2d) 977, and said:

"The insured died on April 18, 1929. Judgment was sought for disability benefits from December 1, 1927, to April 1, 1929, at the rate of $50 per month, with interest. The last premium paid was due on May 27, 1927. The next, allowing a month's period of grace, should have been paid not later than September 27, 1927. Neither that nor any subsequent premium was ever paid. Long prior to the death of the insured, the policy, therefore, had lapsed, unless saved by the terms of the disability clause above quoted. There is evidence in the record from which it reasonably may be found that the insured was totally and permanently disabled from a time before the premiums first became in arrears, and that this condition continued until his

death; but no proof thereof was furnished to the company.

"The petitioners, nevertheless, contend that this is enough to bring into effect the promise of the company to pay the premiums which became due after the disability began. In support of this contention, *Minnesota Mut. Life Ins. Co. v. Marshall, supra,* is cited. The pertinent provisions of the policy there, however, differ from those found in the policy here under consideration. There the policy provided that if the insured, while the policy is in force and before default in payment of premiums, 'shall become totally and permanently disabled . . . and shall furnish satisfactory proof thereof, the Company will waive the payment of premiums thereafter becoming due,' and that 'upon the receipt of due proof of total and permanent disabilities . . . the Company will waive the payment of all premiums thereafter becoming due.' The court held that the waiver took effect at the time of the disability, and did not depend upon the time when proof thereof was furnished.

"We do not need to controvert this construction of the words quoted, or question the soundness of the view of the court that the existence of the disability before the premium became in arrears, standing alone, was enough to create the waiver. In that view, the obligation to furnish proof was no part of the condition precedent to the waiver; but such proof might be furnished within a reasonable time thereafter. Here the obligation of the company does not rest upon the existence of the disability; but it is the receipt by the company of *proof* of the disability which is definitely made a condition precedent to an assumption by it of payment of the premiums *becoming due after the receipt of such proof.* The provision to that effect is wholly free from the ambiguity which the court thought existed in the Marshall policy. Compare *Brams v. New York Life Ins. Co.,* 299 Pa. 11, 14; 148 Atl. 855. It is true that where the terms of a policy are of doubtful meaning, that construction most favorable to the insured will be adopted. *Mutual Life Ins. Co. v. Hurni Co.,* 263 U. S. 167, 174; *Stipcich v. Insurance Co.,* 277 U. S. 311, 322. This canon of construction is both

reasonable and just, since the words of the policy are chosen by the insurance company; but it furnishes no warrant for avoiding hard consequences by importing into a contract an ambiguity which otherwise would not exist, or, under the guise of construction, by forcing from plain words unusual and unnatural meanings.''

In *Jones v. New York Life Ins. Co.,* 158 Wash. 12, 290 Pac. 333, the insured was disabled in 1926 but she did not furnish proof thereof until 1928. We held that the insured was not entitled to recovery of benefits for any period prior to the time of presentation of proof of disability to the company. We said:

''Our real problem is, has Miss Jones any right of recovery, as for her total permanent disability, for any period prior to her presentation of proof thereof to the company in April and June, 1928? The trial judge manifestly was of the opinion, and counsel for Miss Jones contended, that she is entitled to recovery of total permanent disability benefits for the whole period following the commencement of her total permanent disability in March, 1926, regardless of when she presented proof thereof to the company. We are not able to agree with this view. The terms of the policy are that, commencing on the anniversary of the policy, after receipt of proof and on each anniversary thereafter, the company will pay one-tenth of the face of the policy. This plain provision of the policy, it seems to us, leaves no sound basis for holding that Miss Jones is entitled to recovery of any total permanent disability benefits for any period preceding presentation of proof thereof to the company. Counsel for Miss Jones rely upon our decision in *Storwick v. Reliance Life Ins. Co.,* 151 Wash. 153, 275 Pac. 550, as apparently the trial judge did. That policy provided that:

'' ' ''During the period of total and permanent disability, and at any time one year after the premium anniversary date first following the date of such disability, the company will, at the request of the insured and beneficiary or assignee, if any, pay a monthly income amounting to 1% of the face value of the policy,

if there be no existing indebtedness, or if there be such indebtedness, 1% of the face value of the policy less such indebtedness; such payments to continue until the total amount of payments made shall equal the face of the policy, less all indebtedness, if any, at which time the company's liability under this contract shall cease. . . . ''

"Following our rule of liberal construction of policies favorable to the insured, we held that provision to entitle Storwick to the monthly benefits during the whole period of his disability, though proof thereof was not made until sometime after commencement thereof. We think that decision is not controlling here.''

*Reynolds v. Travelers Ins. Co.*, 176 Wash. 36, 28 P. (2d) 310, was an action brought to recover the full amount of a life insurance policy made payable at the death of the insured named therein, and also to recover the aggregate amount of monthly income for permanent total disability of the insured during his lifetime. The insured was totally disabled while the policy was in force, and was committed to an asylum for the insane, where he died. The required proof of disability was not furnished. While totally disabled, premiums became due and were not paid, whereupon the policy was cancelled. The disability of the insured continued until his death, after which suit was brought for recovery on the policy. The indemnity provisions of the policy in that case were practically the same as those involved in the above-cited cases.

We held that insanity of the insured does not excuse the failure to furnish proof of disability, that it was a condition precedent to liability that proof of disability be furnished prior to the lapsing of the policy, and, in effect, that, under disability indemnity provisions like those in the cases cited and in the case at bar, there can be no recovery for period of disability prior to the time required proof is furnished. We said:

"The first question is whether the contract of insurance required under the law of this state that proof of permanent total disability be submitted *prior* to the lapsing of the policy for non-payment of premiums, or merely required that the proof submitted show that the *disability occurred while the policy was still in force.* Under the first alternative, the proof should have been made not later than the date of the expiration of the grace period allowed for the payment of premiums. Under the latter alternative, proof of permanent total disability, although occurring many years before, could be supplied at the time of death of the insured. Under the latter alternative, also, such permanent total disability would of itself have the effect of keeping the policy alive for years, without notice to the company, and without payment of further premiums.

"The decisions, generally, upon this question are in conflict. We need not resolve their comparative weight, because the question has been definitely settled in this state. In *Wick v. Western Union Life Ins. Co.,* 104 Wash. 129, 175 Pac. 953, the total disability clause was practically the same as that here involved. . . .

"There is also a provision to the effect that, if the premimus were not paid when due, the insurance should continue as 'term insurance' during the term, including the period of grace. Further, there was a condition expressed in the policy that, if premiums were not paid on or before the date when due, the liability of the company should only be as thereinbefore provided. The back of the policy, which, when folded in its customary form, became the sectional front, contains an admonitory paragraph, readily discernible at a casual glance, to the effect that, in the event of either death or permanent total disability, notice should be given to the company at once. We call attention to these various provisions and statements merely for the purpose of showing the similarity between the policy in the *Wick* case and that in the present case.

"The *Wick* case, an *En Banc* decision, was decided in 1918. It has never been overruled or modified. Since its rendition, many policies have been written in

reliance upon the construction therein adopted by the court. That decision is, therefore, authoritative and controlling here. We therefore hold that the terms of the policy required that proof of permanent total disability be supplied prior to the lapsing of the policy for non-payment of premiums. . . .

"The general rule is firmly established that insanity or incapacitating sickness of the insured, because of which he fails to pay, when due, a premium or assessment on an insurance policy, will not excuse such failure so as to prevent a forfeiture, termination or suspension of the rights of the insured, in a case where the policy provides for such forfeiture in the event of non-payment of premium. *Sheridan v. Modern Woodmen,* 44 Wash. 230, 87 Pac. 127, 120 Am. St. 987, 7 L. R. A. (N. S.) 973; *New York Life Ins. Co. v. Alexander,* 122 Miss. 813, 85 So. 93, 15 A. L. R. 314; *Smith v. Missouri State Life Ins. Co.,* 134 Kan. 426, 7 P. (2d) 65; *Hipp v. Fidelity Mutual Life Ins. Co.,* 128 Ga. 491, 57 S. E. 892, 12 L. R. A. (N. S.) 319; *Franklin Life Ins. Co. v. Fisher,* 164 Okla. 134, 23 P. (2d) 151; *Klein v. New York Life Ins. Co.,* 104 U. S. 88, 26 L. Ed. 662; *Thompson v. Knickerbocker Life Ins. Co.,* 104 U. S. 252, 26 L. Ed. 765; 3 Couch Cyc. of Insurance Law, p. 2232; 4 Cooley's Briefs on Insurance (2d Ed.) p. 3671; 14 R. C. L. pp. 987, 996.

"While, upon first thought, this rule may be considered harsh, it has very substantial reason to support it. Prompt payment of premiums is of the very essence and substance of the contract, against which the courts may not grant relief. While sickness or insanity of the insured may render it impossible for *him* to pay the premium, it does not render payment wholly impossible, because it may be paid by others for him. Sickness or insanity of the insured is not considered to be such an act of God as will excuse failure to make prompt payment of premiums.

"Now, if insanity does not excuse the failure to pay premiums, then there can be no good reason why it should excuse the failure to furnish proof of disability. It is the proof of disability that excuses the failure to pay the premiums. The very purpose of disability insurance is to provide an income during such disability,

not to accumulate a fund for the benefit of a third party beneficiary. Such disability includes insanity and other forms of mental incompetency. Hence, when the insured takes out such insurance, he is called upon to make provision, as he easily may and usually does, for a contingency that may render him unable, personally, to make proof.

"There are very potent reasons why this should be the rule. If the time for making proof be not confined to the period during which the policy is in force, then the beneficiary may wait until the insured has died and afterwards claim that the disability took place years before. The insurer would thus be put in a position where it would be almost impossible to make an investigation of the true facts of the situation. The practical effect would be that an insurance company would be compelled to carry every lapsed or forfeited policy as a contingent liability until after the death of the insured. All actuarial computations would thus be upset, and the amount of proper reserves could never be determined. We, therefore, must hold that the incapacity of the insured furnished no excuse for the failure to make due proof during the time that the policy was kept in force by the payment of premiums."

The cases cited are controlling. Under the disability indemnity provision of the two insurance policies, the furnishing of proof of disability is a condition precedent to liability of insurer to pay. The respondent was not entitled to recovery of benefits for any period prior to the time of presentation of proof of disability to the insurer. It is axiomatic that parties may make such a contract for insurance as they may see fit, provided the same is not in contravention of any provision of law. If the disability provisions of the insurance policies are valid, respondent is entitled to no more than the appellant insurer allowed on respondent's claim—annuity payments to begin six months after December 12, 1932, the date the respondent furnished proof of his disability.

■ Counsel for respondent argues that, as the policies do not conform to the following statutory requirements (insurance code of 1911, which was in effect when the policies were issued), the provision for deferring of payment until after a period of six months following proof of total disability is void:

"No policy of insurance against loss or damage from disease or by bodily injury by accident, or both, of the assured, shall be issued or delivered in this state until a copy of the form thereof and the table of rates or manual of risks of the company has been filed at least thirty days with the commissioner, unless before the expiration of said thirty days the commissioner shall have approved the same in writing; nor if the commissioner notifies the company in writing that in his opinion the form of said policy does not comply with the requirements of the laws of this state, specifying the reasons for his opinion: . . . nor unless it contains in substance the following provisions: . . .

"(2) A provision that specifies the time within which notice of accident or disability shall be given, which time shall be not less than ten days from the date of the accident or the beginning of the disability from sickness upon which claim is based: *Provided, however,* That in case of accidental death, immediate notice thereof may be required; unless the notices herein specified may be shown not to have been reasonably possible.

"(3) A provision that notice of a claim for indemnity shall be deemed sufficient when given to the company . . .

"(6) A provision that the company will pay the benefits promised within sixty days of the receipt by it of due proofs of death or disability." Ch. 49, Laws of 1911, p. 264, § 187.

It is the duty of the insurance commissioner to examine all forms of life insurance policies proposed to be issued in this state and to disapprove the use of any which are not in compliance with the statutory pro-

visions for a standard life insurance policy. The same duty is imposed upon the commissioner with respect to the form of health and accident insurance policies. The two policies in this action are life insurance policies, and neither contains any of the provisions, required by the statute, affecting health and accident insurance policies. It is not disputed that the form of life insurance policy now before us was filed, as required by statute, with the insurance commissioner, who did not forbid the use of same.

The insurance code of 1911 divided the different kinds of insurance, affecting persons and property, into clearly defined classes.

"All insurance business in this state is hereby classified as follows: . . .

"(3) Life insurance, including endowments and annuities, but not including health or accident or sickness insurance, or any casualty insurance as hereinafter provided.

"(4) Accident insurance, and either sickness or health insurance, including insurance against injury, disablement or death resulting from traveling or general accident, and against disablement resulting from sickness and every insurance appertaining thereto . . ." Ch. 49, Laws of 1911, p. 217, § 83.

It is not contended that appellant insurer may not transact insurance business of two or three classes. There is no provision in the 1911 insurance code forbidding the combination of two classes of insurance (life insurance and health and accident insurance) in the same policy. However, it is insisted by respondent that, the insurer having combined the two classes of insurance in one policy, it is essential that there be a compliance with the statutory requisites respecting each of the two classes of insurance.

The policy issued in 1916 states, on the first page, that the insurer agrees to pay to the insured the sum

of ten thousand dollars in 1935, or, if the insured die before that time, to pay ten thousand dollars, upon receipt of due proof of the death of the insured, to the executors, administrators or assigns of the insured. The policy further states that all of the benefits, privileges and provisions recited on the second and third pages of the policy form a part of the policy ''as fully as though recited at length over the signatures hereto affixed.'' The two policies before us differ, in that one is an endowment policy and the other is a limited payment life policy. The provisions on the subsequent pages of each policy require payment, in addition to the premium for life insurance, of a stated amount annually for disability benefits. Such payment is optional; that is, the insured may discontinue payment of the additional premium. Non-payment of the additional premium voided the provisions (quoted in the fore part of this opinion) respecting disability and the benefits secured thereby. The purpose of the disability provision of the policy was to prevent lapsation of the policy and to provide an income for the insured during such disability, not to accumulate a fund for the benefit of a third party beneficiary.

An insurance policy like the two in the case at bar, including payment to the insured, if he be living on a certain date or to his estate in the event of his death, and a total disability provision as described above, constitutes a life insurance policy within the meaning of the insurance code of 1911. The statute does not require that contracts of insurance for each of the classes defined shall be in separate and distinct policies.

The contention that the policy is also a health and accident insurance policy, and therefore must contain the provisions urged by respondent, is answered by the statute. The insurance code of 1911 provides:

"Nothing in this act shall affect any general or blanket policy of insurance issued to any municipal corporation or department thereof, or to any corporation,. co-partnership, association, or individual employer, police or fire department, underwriters' corps, salvage bureau, or like associations or organizations, when the officers, members, or employees or classes or departments thereof are insured against specified accidental bodily injuries or diseases while exposed to the hazards of the occupation or otherwise, for a premium intended to cover the risks of all persons insured under such policy; nor shall anything in section 187 and 188 of this act apply to or affect contracts of life insurance, or contracts supplemental thereto, which shall contain provisions intended to safeguard such life insurance against lapse, or that shall provide a special surrender value therefor in the event that the assured thereunder shall, by reason of accidental bodily injury or disease, be unable to continue the premium payments thereon." Ch. 49, Laws of 1911, p. 267, § 189.

Section 189 of chapter 49, Laws of 1911, p. 267, was repealed by chapter 31, Laws of 1921, p. 115, § 2. Subdivision (j) of § 1, chapter 31, Laws of 1921, p. 114, as amended by chapter 124, Laws of 1929, p. 296, § 8 (Rem. Rev. Stat., § 7242-a), reads as follows:

"Nothing in this act shall apply to or in any way affect contracts of life or endowment insurance or contracts supplemental thereto, where such contracts or supplemental contracts contain no provisions relating to accident or health insurance except accidental death benefits and except such as operate to safeguard such insurance against lapse, or to give a special surrender value or an annuity providing for payments during the lifetime of the insured, with or without reduction of the sum insured in the event that the insured shall be totally and permanently disabled from any cause: Provided, That no such supplemental contract shall be issued or delivered to any person in this state unless and until a copy of the form thereof has been submitted to and approved by the insurance commissioner, under such reasonable rules and regulations

as he shall make concerning the provisions in such contracts and their submission to and approval by him.''

The insurance code of 1911, and subsequent amendments thereof, clearly provide that life insurance contracts containing provisions which operate to safeguard the life insurance against lapse, or provide for payments, during the lifetime of the insured, of an annuity in the event of total and permanent disability of the insured, are not within the purview of the health and accident insurance provisions of the insurance code.

The contention of the respondent respecting the meaning of the provision

    '' . . . the Company will agree within sixty days of the receipt by it of due proofs of total and permanent disability to pay the disability benefits under the conditions in said Policy provided,''

which was attached to the policy of 1921, is not in conflict with the provision for payment of benefits.

The judgment is reversed, and the cause remanded with direction to dismiss the action.

BEALS, C. J., MAIN, STEINERT, and BLAKE, JJ., concur.

TOLMAN, J., dissents.

MITCHELL, J. (dissenting)—I dissent. On July 13, 1932, while the policies of insurance were in good standing, the insured became wholly disabled, within the terms of the policies, and on December 12, 1932, made proof thereof, to the satisfaction of the insurance company, and claimed benefits to which he was entitled. The insurance company denied liability to pay benefits for any period of time earlier than June 12, 1933, six months after proof of the disability of the insured. On May 10, 1933, the insured commenced

this action on the policies. Upon issues framed, trial was had in October, 1933, which resulted in findings and judgment in favor of the plaintiff. The defendant has appealed.

The evidence and findings were to the effect that the insured became totally disabled July 13, 1932, furnished due proof thereof on December 12, 1932, and has been paid nothing on account of his disability for time prior to June 12, 1933, but that all installments due under the policies for time commencing June 13, 1933, six months after proof of disability, have been paid. As I understand, these facts are not at all disputed.

Plainly stated, the appellant makes two contentions on the appeal: (1) that there is no liability for payments upon the occurrence of total disability, nor until claim and proof of disability were made; and (2) that the insured is not entitled to benefits at all for any time prior to six months after due proof of disability, because of a clause in the policy that "the first monthly payment to be made six months after receipt of due proof of total disability." According to these contentions, the appellant demands that the judgment of the trial court be reversed and the action dismissed. The decision in this court gives that relief, so that for a period of eleven months of total disability the insured gets nothing.

*There is no claim that, at any time, there has been any default in the payment of any premium upon the policies.*

As to the first point, the argument, as I understand it, is that, since by the terms of the policies due proof of disability is a condition precedent to the right to collect, therefore the insured is not entitled to pay at any time, even after due proof, for that period of time happening prior to the making of due proof. The poli-

cies, however, do not say that, unless the decision on the second point in the case is correct. Due proof is a condition precedent to the right only to collect, and not to the commencement of time for which benefits may be collected after the condition precedent has been complied with by the making of due proof of disability. Significantly, the present action was not commenced until after due proof of total disability, to the satisfaction of the company, had been made.

Only several of the leading cases relied on in the decision may be discussed to show their inapplicability, as I understand them, to the situation in the present case.

*Wick v. Western Union Life Ins. Co.,* 104 Wash. 129, 175 Pac. 953, was decided against the beneficiary under the policy because of defaults in the payment of premiums as a condition precedent to the right to recover.

*Jones v. New York Life Ins. Co.,* 158 Wash. 12, 290 Pac. 333, was determined upon a provision in the policy that:

"One year after the anniversary of the policy *next succeeding the receipt of such proof,* the company will pay the insured a sum equal to one-tenth of the face of the policy, and a like sum on each anniversary thereafter during the continued disability of the insured within the endowment period." (Italics mine.)

The only thing decided in the case, as indicated by the one syllabus, was that the company was not obligated to pay benefits for any period of time prior to the presentation of proof to the company. In that respect, the decision simply followed the plain, unambiguous language of the contract. No other result could have been reached. That policy definitely specified the date and amount, not only of the first, but each and all subsequent payments during the continued

disability of the insured within the endowment period. It was as definite as though it had provided for the payment of an amount equal to the face of the policy one year or any other specified time after the company received due proof; or as though promissory notes, with specified due dates, had been given for payment of benefits. But the policies in the present case are not that kind. Suppose in that case the contract had provided for payments each year of ten per cent of the face of the policy, the first yearly payment to be made six years after receipt of due proof of total disability, would it have been held that, notwithstanding due proof, the insured could not have collected anything within six years; and that, if he had died on the sixth anniversary of his total disability, the insurance company would have been altogether free?

Nor is *Bergholm v. Peoria Life Ins. Co.*, 284 U. S. 489, 52 S. Ct. 230, in point. The provision in that contract for the first monthly payment to be made *immediately* upon receipt of proof of total disability was not involved. There had been a default in the payment of premiums, and, to excuse it, the insured invoked the promise of the company to pay certain specified premiums becoming due on the policy, and the decision, succinctly stated in the syllabus, was:

"Clauses in a policy by which the company undertook to pay the premiums if the insured were totally and permanently disabled, but only upon receipt by it of proof of such disability and only the premiums becoming due after such receipt, *held* unambiguous and not to be construed, to save the policy from a lapse, as an agreement to pay premiums accruing after the disability occurred but before the company received proof of it."

Nor do I think the decision on the second point in the present case is right. As already noticed, the contract in this respect provides:

"b. . . . the Company will *pay to the insured each month* One Hundred Dollars, . . . the first monthly payment to be made six months after receipt of due proof of the said total disability, . . . and subsequent payments monthly thereafter during the continuance of the said total disability of the insured. . . ."

The majority opinion in its result mistakenly makes the words "six months," found in the phrase "the first monthly payment to be made six months after receipt of proof of the said total disability," speak of the period of *time* or first month of the commencement of the *right* to benefits, rather than of "the date the first monthly payment to be made." It is construed as if it read, "the first month for which payment is to be made shall be the sixth month after receipt of due proof of total disability."

These are total disability insurance contracts, each carrying benefits of one hundred dollars *per month,* and provide, not that the first *payment* shall be made or paid immediately upon due proof, nor one day, week or month thereafter, but six months thereafter. But this does not lessen or avoid liability for the payment at some time of benefits for each month of total disability. It simply defers for the time specified payments that otherwise 'would be presently due.

Contracts and statutes differ upon the subject of time within which payments will or must be made after due proof of facts fixing liability. Manifestly, the form of these policies with respect to this feature was gotten up for general use in the different states, knowing that, if used in a state having a statute fixing a different time, the statute would control. There is such regulation in this state, mentioned in the majority opinion, Rem. Rev. Stat., § 7235, subd. 9, relative to the *time* within which payments, other than for

*loss of time* on account of disability, shall be made, requiring a provision for immediate payment or a period of time to be designated, not exceeding sixty days. But whether considered from the standpoint of the contract or of the statute, this kind of a provision relates only to the time of payments, and not to the period or periods of time for which income or benefits shall be paid.

The language in question must be held to mean that, during the continuance of total disability, which is the case here, the company will pay one hundred dollars per month, and on principle, the facts in this case are clearly within the doctrine of *Storwick v. Reliance Life Ins. Co.*, 151 Wash. 153, 275 Pac. 550, which involved several policies, differing somewhat in phraseology, though in ultimate effect the same, upon the feature we are now considering, and with the same general effect as in the present case. In that case, it was said:

"It will be remembered that the policy of February 7, 1917, above quoted from, provides that:

" 'During the period of total and permanent disability and at any time one year after the premium anniversary date first following the date of such disability,'
the company will pay the *monthly benefit*. This language does seem to furnish some room for arguing that Storwick would not be entitled to the payment of the monthly installments for the months preceding one year after the premium anniversary following the date of disability, but the preceding words are 'during the period of total and permanent disability.' *We think the most that can be successfully claimed is that Storwick would not be entitled to receive the payments until one year after the premium anniversary following the date of disability. This, we think, does not successfully argue that he would not then be entitled to the back installments during the whole period of his total disability. This view, we think, is equally appli-*

*cable to the two policies of February 10, 1920, though by the terms of those policies the time for making the payments by the company to Storwick begins six months after the receipt of proof of the disability.*" (Italics mine.)

This case was referred to in *Jones v. New York Life Ins. Co., supra,* and held not to be controlling in that case because of manifest differences in the wording of the policies, as mentioned in that decision.

The case of *Aetna Life Insurance Co. v. Phifer,* 160 Ark. 98, 254 S. W. 335, appears also to be directly in point. The language of the policy in that case is similar to the language in the present case, though the arrangement of the words is somewhat different. In that case, the policy provided:

"*Six months after proof is received* at the home office of the company, before the sum insured, or any installment thereof, becomes payable, that the insured has become wholly, continuously and permanently disabled, and will for life be unable to perform any work, or conduct any business for compensation or profit, . . . the company will, if all premiums previously due have been paid, waive the payment of all premiums falling due thereafter during such disability, and, if such disability was sustained as above described, and before the insured attained the age of 60 years, the company will pay to the life beneficiary the sum of $10 for each thousand dollars of the sum herein described as the sum insured, and will pay the same sum on the same day of every month thereafter, during the lifetime and during the disability of the insured."

A question similar to the one involved in the present case was presented in that case, with respect to which the court said:

"Appellant next contends for a reversal of the judgment because nothing was due appellee under the terms

of the permanent total disability clause when this suit was commenced, claiming that liability under the clause did not begin until six months after the final proof of the injury and disability was made. In other words, that liability did not begin when the injury and consequent disability occurred. The correct construction of the clause is that liability began with the disability.''

Payment deferred does not cancel a promise to pay. I think the judgment appealed from should be affirmed.

HOLCOMB, J., concurs with MITCHELL, J.