[No. 26346. *En Banc.* August 16, 1937.]

ISAACSON IRON WORKS, *Respondent,* v. THE OCEAN ACCIDENT AND GUARANTEE CORPORATION, LIMITED, *Appellant.*[1]

[1]Reported in 70 P. (2d) 1026.

*Roberts & Skeel* and *Frank Hunter,* for appellant.

*Ballinger, Clark, Mathewson & Force,* for respondent.

BEALS, J.—Isaacson Iron Works, a corporation, the plaintiff in this action, during the month of October, 1934, agreed, as a sub-contractor, to erect the necessary steel frame for a large illuminated sign which it was desired to place upon the roof of a building in Seattle. The building had a false roof, covering concrete. In order to anchor the steel frame to the solid concrete slab, plaintiff cut many holes through the false roof. On the afternoon of October 19th, plaintiff's workmen, on quitting work for the day, left a number of these holes uncovered, and as it happened to rain that night, water ran through the holes and leaked through the concrete roof into a vault, seriously damaging valuable records and blueprints belonging to the owner of the building.

The Ocean Accident and Guarantee Corporation, Limited, a corporation, had issued to plaintiff its public liability policy (including the "property damage schedule" upon which plaintiff relies), covering, *inter alia,* property loss or damage arising out of accidents which

might arise during the course of the work in question. The owner of the building assigned to the principal contractor its claim for damages against the plaintiff, and suit was instituted thereon. Plaintiff tendered to its surety, the defendant in this action, the defense of the suit, which the surety company refused to accept, as it denied all liability in the premises. The damage suit was tried to a jury, which returned a verdict in favor of the plaintiff, as assignee of the owner of the property damaged.

Judgment having been entered upon this verdict, the plaintiff herein paid the same, and instituted this action for the recovery of the amount which it paid, together with attorney's fees and costs expended in defending the prior suit, By its answer, defendant denied liability, and in due time the action was tried to the court sitting with a jury. At the close of the case, each party moved for a directed verdict in its favor, whereupon the court discharged the jury and entered findings of fact and conclusions of law in plaintiff's favor, followed by a judgment against defendant, from which this appeal has been prosecuted.

Error is assigned upon the refusal of the court to strike the testimony of two of respondent's witnesses; upon the court's refusal to admit certain evidence offered by appellant; upon the entry of findings of fact and conclusions of law in respondent's favor; upon the court's refusal to dismiss the action on appellant's motion; upon its denial of appellant's motion for judgment in its favor notwithstanding the verdict, or in the alternative for a new trial; and finally, upon the entry of judgment in respondent's favor.

The policy written by appellant and accepted by respondent contains the following provisions:

"To insure . . . against loss by reason of the liability imposed by law upon the Assured for damages, on account of damage to or destruction of property

(including loss of use thereof and damage or destruction by fire), as the result of an accident . . . caused solely and directly by the Assured's business or work covered herein and during the prosecution of such work . . . and subject further to all . . . conditions . . . hereinafter contained. . . .

"(1) (a) The Assured agrees to use due diligence and exercise reasonable care to avoid doing damage to property of others. (b) It is mutually agreed that this endorsement shall not cover damage made necessary by the nature of the work or by the manner of doing it, nor damage due to ordinary wear and tear caused by the Assured's operating equipment, nor damage intentionally inflicted; it being the purpose of this endorsement to apply solely to 'accidental' property damage, by which term is meant—an unexpected, fortuitous occurrence, an unpremeditated mishap or event."

Appellant is, of course, entitled to stand upon its contract as written, and the insured must bring himself within the terms of the policy before he can establish the insurer's liability thereon. *Imperial Fire Ins. Co. v. Coos County,* 151 U. S. 452; Couch, Cyc. of Insurance Law, vol. I, § 57; 14 R. C. L., § 103, p. 926.

As it was alleged in the complaint in the prior action against respondent that the contents of the building were damaged as the result of respondent's negligence, and as the defense of the prior action was tendered to appellant, appellant contends that the judgment in the prior action constitutes *res judicata;* and that, from the record in the case at bar, it should be held that the judgment roll in the prior action conclusively shows that respondent's negligence was the cause of the damage, and that under the policy, respondent cannot recover. The doctrine of *res judicata* does not, of itself, require the entry of judgment in appellant's favor; other questions must be considered and determined.

On the trial of this action, there was admitted in evidence a judgment roll in the prior action, showing the

trial thereof and the rendition of a verdict in favor of the plaintiff therein and against this respondent. The roll also contains the complaint, the answer and cross-complaint, and the reply thereto, as well as the instructions of the trial court, the final judgment entered on the verdict of the jury, and the satisfaction thereof. The complaint in the former action was based solely upon the theory of the negligence of the defendant, the respondent here.

In order to make its case herein, respondent was required to show that it had been compelled to pay damages to someone and had suffered a loss thereby. In its complaint, after pleading the policy sued upon, respondent alleged that it had been sued, and that a verdict had been rendered against it. It also alleged that it had tendered the defense of the action to appellant herein, and that appellant had refused to defend the suit. In the course of the introduction of evidence on the part of respondent under its complaint, there came into the record the items making up the judgment roll above referred to.

Considering this record as a whole, with particular regard to the pleadings and the court's instructions, it clearly appears that the jury in the first suit could have found in favor of the plaintiff therein only after finding that the defendant had been guilty of negligence which resulted in damage to the owner of the building. As stated by respondent's counsel during the trial below, respondent is basing this action upon the result of the trial of the prior action. It relies upon that result, but seeks to avoid the facts upon which the jury reached that result. From the record before us, then, it must be held that the judgment which was rendered in the former action against the plaintiff in this action (respondent) was based upon a finding by the jury that respondent had been negligent in performing the work

which it had contracted to do, and that its negligence had resulted in the payment which it seeks in this action to recover from appellant.

The question, then, turns upon the provisions of the policy of insurance which appellant issued to respondent.

The burden rested upon respondent to show that the loss which it suffered comes within the terms of the policy; while, on the other hand, if the policy be ambiguous, such ambiguity should be construed in favor of the insured. *Maylon v. Ocean Accident & Guarantee Corp.*, 149 Wash. 70, 270 Pac. 96; *Ragley v. Northwestern Nat. Ins. Co.*, 151 Wash. 545, 276 Pac. 537; *Brown v. Northwestern Mutual Fire Assn.*, 176 Wash. 693, 30 P. (2d) 640.

Respondent's claim is based upon a "Property Damage Schedule," or rider, attached to a public liability policy which it purchased from appellant. Assuming that the damage resulted from an accident, within the coverage clause above quoted, does the record in the prior action, introduced in evidence herein, defeat respondent's claim because respondent, having been guilty of negligence, did not use due diligence and exercise reasonable care?

In the first place, respondent argues that the obligation which rested upon it went no further than to obligate respondent to hire experienced and competent workmen; and that, as during the trial below evidence was introduced to the effect that it did hire experienced and competent men, which evidence was not controverted by appellant, the warranty or agreement in the policy above referred to does not operate to bar respondent's recovery in this action. This question will be discussed later.

The parties to a contract of insurance may contract for any lawful coverage, and they are free to enter

into any contract they desire. In the case of *Cosgrove v. National Casualty Co.*, 177 Wash. 211, 31 P. (2d) 80, this court said:

"In the absence of some statutory provision to the contrary, an insurance company has the right to limit its liability, and to impose restrictions and conditions upon its contractual obligation, not inconsistent with public policy."

The case of *Kearns v. Penn Mutual Life Ins. Co.*, 178 Wash. 235, 34 P. (2d) 888, is to the same effect.

This doctrine is well stated in the text of Couch, Cyc. of Insurance Law, vol. I, § 57, as follows:

"It is axiomatic that parties may make such a contract for insurance as they may see fit, provided the same does not contravene any provision of law or public policy, and this, even though the contract is improvident as to the insured."

This court has laid down the rule that, in construing policies of insurance, the general rules for construction of contracts apply. In the case of *Richards v. Metropolitan Life Ins. Co.*, 184 Wash. 595, 55 P. (2d) 1067, we said:

"A policy of insurance is a contract, and its language, like that of any other contract, must be given its usual and ordinary meaning, unless it is apparent from a reading of the whole instrument that a different or special meaning was intended, or is necessary in order to avoid an absurd or unreasonable result."

In the earlier case of *Green v. National Casualty Co.*, 87 Wash. 237, 151 Pac. 509, it was held that

"Contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous, their terms are to be taken and understood in their plain and ordinary meaning."

Nowadays many policies are written which by their terms protect the insured against his own negli-

gence. The ordinary automobile indemnity coverage and insurance against fire are of this class. Such policies are not against public policy. Nevertheless, the theory of insurance which protects the insured against damage to a third person resulting from accident occurring in the course of the insured's operations, but which does not protect the insured against the result of his own negligence, is perfectly reasonable. It is for the insurer to determine what insurance he will write for a certain premium, and for one desiring insurance to determine whether or not any given policy affords him protection which he desires, and for which he is willing to pay the premium demanded. It is a matter of balancing risk against cost of protection. As was noted in the case of *Cosgrove v. National Casualty Co., supra,* the insurer has the right to determine what hazards it will assume for a specified consideration.

It is not argued that any advantage was taken of respondent; the policy and the endorsement or rider were there for anyone to read. Respondent was purchasing a policy protecting it in many contingencies, and plain and simple language in the policy must be given effect as against either party to the contract. The policy is limited to protection against damage resulting from an accident. The insurer's liability is thus at the very outset considerably limited. Damage made necessary by the nature of the work or by the manner of doing it are also eliminated.

There is nothing essentially illogical or even unreasonable in a provision to the effect that the insurer shall not be liable in case the insured be guilty of negligence. That provision of the policy must either be given effect according to its plain language, or by judicial interpretation written out entirely. If, in the case at bar, respondent may recover against appellant, it is difficult to imagine what respondent's agreement

to exercise reasonable care and use due diligence means. The words are plain and scarcely susceptible of construction. To limit the language by judicial construction, appears unreasonable.

■ Respondent argues that the contract of insurance required it to do no more than employ experienced and capable workmen; and that, when it selected such men, it lived up to its contract and is not chargeable with their negligence. Respondent is a corporation and can act in any capacity only through its officers or agents. We find no authority, either in precedent or reason, for respondent's position on this phase of the case.

In its briefs, respondent refers to the high premium rate which it paid for the protection afforded by the "Property Damage Schedule." By this schedule, the insurer's liability was limited to twenty-five thousand dollars for any one accident. The policy, then, underwrote a considerable potential liability, and we find no basis in the record for concluding that the cost of the protection to respondent was high or anywise out of proportion to the protection paid for under any theory. In any event, unless it appears from the evidence that the premium paid is grossly out of line in consideration of the coverage, the cost of the insurance is a matter for the parties to determine. The record before us affords no ground for respondent's statements that the premium paid should have purchased more protection than the policy, by its terms, afforded; or that the amount of the premium should be considered as a basis for construing the policy as contended by respondent.

In the prior action, respondent pleaded several affirmative defenses: First, assumption of risk, or contributory negligence; second, assumption of risk, coupled with misrepresentation as to the building structure; third, that the plaintiff had acquiesced in

the manner of performance of the work; fourth, that the plaintiff in the action had direction and control of the work; and fifth, negligence on the part of the owner of the building in maintaining the vault in which the papers damaged were stored. In addition, the court instructed the jury that, if the damage resulted solely from an act of God, respondent was not liable. The jury found against respondent upon all of these issues and determined that the damage resulted from respondent's negligence. All those issues have been determined.

Respondent argues that the construction which appellant places upon the insurance policy leaves respondent no protection, but manifestly damage might occur to some third party against which respondent would be protected under the policy. One such situation is clearly described in the case of *Bartel v. Ridgefield Lumber Co.*, 131 Wash. 183, 229 Pac. 306, 37 A. L. R. 683, in which this court directed the allowance of damages in favor of a plaintiff, although holding that the defendant was operating its business with due care. The court referred to the case of *Farnandis v. Great Northern R. Co.*, 41 Wash. 486, 84 Pac. 18, 111 Am. St. 1027, 5 L. R. A. (N. S.) 1086, in which a recovery was allowed for damages to a building caused by the shaking of the earth resulting from the construction of a railway tunnel, although no negligence had been shown in connection with the tunnel's construction. It is clear that damages may result to third persons, for which legal responsibility exists, from the carrying on of a building operation or the conduct of a business, although the operator has not been negligent.

Our attention has been called to few, if any, authorities which bear upon the question to be determined in construing the policy of insurance now before us,

and independent research has thrown little light upon this phase of the case. The matter is important and not free from difficulty. It is not contended that respondent's officers who procured the issuance of the insurance were laboring under any disability which prevented them from understanding the plain language of the policy. It must be held that respondent is bound by its terms.

It must be remembered that the policy, in so far as the same affords a basis for the claim now under consideration, was restricted to

" . . . liability imposed by law upon the Assured for damages, on account of damage to or destruction of property (including loss of use thereof and damage or destruction by fire), as the result of an accident occurring during the effective period of this endorsement, caused solely and directly by the Assured's business or work covered herein . . ."

The protection which respondent enjoyed under the policy was expressly limited to the results of accidents, and while it may be true that respondent received under the policy less protection than it thought it was purchasing, it must be held that the terms of the policy are plain and unambiguous, and that the cause of action disclosed by the record in this case does not fall within its protection.

█ The policy sued upon binds the insurer to investigate accidents involving "such injuries," to defend suits for damages, "even if groundless, brought on account of such injuries," and to pay costs. Whether appellant is liable under these paragraphs of the contract, depends upon whether or not the claim made against the insured is covered by the policy. As admitted by respondent on the oral argument, if the claim falls without the terms thereof, appellant is under no obligation to investigate or defend. As we hold that respondent's cause of action in the case at

bar is not covered by the policy, appellant is not responsible for respondent's expenses in defending the prior suit.

The conclusion which we have reached renders unnecessary further discussion of the points argued by the respective parties.

The judgment appealed from is reversed, with instructions to dismiss the action.

STEINERT, C. J., MAIN, HOLCOMB, BLAKE, GERAGHTY, ROBINSON, and TOLMAN, JJ., concur.

MILLARD, J. (dissenting)—I cannot agree with the majority opinion "that respondent's cause of action in the case at bar is not covered by the policy."

The policy provides that appellant will insure the assured against loss by reason of the liability imposed by law upon the assured for damages on account of damage to or destruction of property as the result of an accident caused solely and directly by assured's business or work covered by the policy. Under that policy, the assured was obligated to use due diligence and to exercise reasonable care to avoid doing damage to the property of others. The policy provided that it was the purpose of the property damage endorsement "to apply solely to accidental property damage."

The judgment in the former damage action is not *res adjudicata*. *Northern Pac. R. Co. v. Snohomish County*, 101 Wash. 686, 182 Pac. 878. See, also, *Baxter v. Central West Casualty Co.*, 186 Wash. 459, 58 P. (2d) 835, in which we held that while a judgment is generally *res adjudicata* as to every point properly belonging to the subject of litigation, there is no *res adjudicata* where the second action involves a different question, although the actions were similar.

It is quite true that, in the former action, the negligence of the servants of the Isaacson Iron Works was

the negligence of the employer; but in the present action, whether the respondent used due diligence and exercised reasonable care, constituted an affirmative defense which the appellant was required to interpose if it would defeat the action. The statement of the appellant that the acts of the employees of a corporation are acts of a corporation is only partially true. It was the duty of the respondent to employ men who were capable of performing the work. The negligence of those employees is not the negligence of the respondent, if the respondent used due diligence and exercised reasonable care in the selection of those employees. The testimony on behalf of the respondent as to the skill and competency of the men employed is not disputed.

The rule to the effect that the negligence of employees is not attributable to the employer in cases like the case at bar is stated as follows in §§ 1476 and 1478, Couch, Cyclopedia of Insurance Law, Vol. 6:

"In view of the fact that the object of insurance is to grant indemnity against certain perils the risk of which the insurer assumes, and, as shown in the preceding chapter, that the proximate cause of loss, rather than the remote cause, is to be considered, it is quite generally agreed that, unless the policy provides to the contrary, the negligent or other wrongful, but nonprohibited, act of the insured does not preclude recovery, especially where the loss is only remotely ascribable to such negligence. And, as a matter of fact, many forms of insurance obviously contemplate indemnity, or purport to protect the insured against losses resulting from negligent or wrongful acts, unless fraudulent or amounting to reckless and wilful misconduct, habitual carelessness, or criminal conduct, so that it would seem that it would not be fatal, unless expressly so declared, or within one of the classes just mentioned, that the loss was directly and proximately caused by the mere negligence, carelessness, or want of due care on the part of the insured, or his authorized representatives

or agents or others, as in the case of accident, fire, automobile, etc., insurances. So, for instance, although a common carrier cannot avoid liability for negligence by direct contract, there is no reason of public policy which prohibits him from contracting with a third person for insurance against losses sustained or injuries caused by reason of his own or his servant's negligence. And in this connection it may be generally stated that people insure against their own negligence as well as that of their neighbors, and against those untoward events which human foresight is unable to prevent; against accidental causes which cannot be avoided, and against acts of omission or commission on their part which might have been guarded against, and the dangers arising in the carrying on of business operations in the ordinary way; and such must, in general, be considered a necessary part or incident of the risk which the insurer has undertaken to bear. As has been well stated by Mr. Justice Story: 'There is nothing unreasonable, unjust, or inconsistent with public policy in allowing the insured to insure himself against all losses from any peril not occasioned by his personal fraud.' . . .

"If the servants of insured are so habitually and frequently careless in performing their duties, it may be a question whether the failure of the insured to exercise reasonable diligence, or to employ faithful servants, does not make their acts of negligence those of the master; at least, it has been held that it does; but it may be suggested that even in such a case there must be such gross negligence as to evidence fraud, within the meaning of the above rule, and under the authorities."

The appellant failed to prove the affirmative defense that the respondent did not use due diligence and exercise reasonable care to avoid doing damage to the property; hence, the judgment should be affirmed.