**UNITED STATES et al. v. EAGLE STAR INS. CO., Limited et al.**

**No. 13122.**

United States Court of Appeals
Ninth Circuit.

April 29, 1952.

Rehearing Granted June 11, 1952.

J. Charles Dennis, U. S. Atty., Houghton, Cluck, Coughlin & Henry, all of Seattle, Wash., for appellants.

MacBride, Matthews & Hanify and B. S. Wilkerson, all of Seattle, Wash., for appellees.

Before HEALY, BONE and POPE, Circuit Judges.

POPE, Circuit Judge.

William F. Leland of Seattle, Washington, the above decedent, was the owner of a DC–3 airplane. On the evening of January 2, 1949, the plane attempted to take off from Boeing Field at Seattle, loaded with a group of 27 Yale students returning to school from their Christmas holidays. The plane crashed killing a number of the students, as well as Leland, the pilot, and the co-pilot, and destroying the plane. In the crack-up the plane struck some installations owned by King County, Washington, causing damage thereto.

Leland, who was operating the plane as a nonscheduled aircarrier, had a certificate of insurance issued by the appellees. It insured him against accidental loss of or damage to the aircraft and against public liability for bodily injury or death to third persons and against loss arising from liability for property damage caused by accidents occurring through use of the plane.[1]

King County filed a claim and brought suit against Leland's estate to recover for damages done to the County's property, a revetment hangar located on the airfield. The administrator notified the appellees of the claim and suit but they refused to settle or defend.

The County recovered damages in its suit against the administrator. The present action, brought in the court below because of diversity of citizenship of the parties, set up two claims or causes of

action, the first seeking recovery for loss of the airplane, and the second seeking recovery of the amount of the County's judgment against the administrator with attorneys' fees and expenses incurred in the defense of the County's suit.

The appellees' undertaking to insure was "subject to the terms, conditions and limitations" contained and set forth in the policy or certificate. Included in those conditions were the following: "(1) At the commencement of each flight the Aircraft shall have a valid and current airworthiness certificate issued by the Civil Aeronautics Authority. * * * (2) The Aircraft shall be operated at all times in accordance with the operations authorized as set forth in the operations record of the Aircraft. (3) The assured shall use due diligence and do and concur in doing all things reasonably practicable to avoid or diminish any loss of or damage to the property hereby insured and in the event of the Aircraft sustaining damage covered by this Certificate and/or Policy, the Assured or his/their accredited agents shall forthwith take such steps as may be necessary to ensure the safety of the damaged Aircraft and its equipment and accessories."

The court, sitting without a jury, found that Leland had violated the conditions of the contract of insurance in that he personally failed to use due diligence and do and concur in doing all things reasonably practicable to avoid loss or damage to the aircraft, and that he negligently caused the pilot to attempt to take off in dangerous weather conditions and when the insured aircraft had an accumulation of ice, snow and frost on the wings and fuselage which materially impaired its lifting qualities.[2] The court's conclusion was that the plain-

1. The claims arising out of injuries and death of the passengers were settled by agreement of the parties affected, and the compromises so arrived at have no bearing upon the issues now before us.

2. The significant findings are in paragraphs IX, X and XI, as follows:
   "IX. That William F. Leland, the assured, and the owner of the insured aircraft, personally failed to use due diligence and do and concur in doing all

things reasonably practicable to avoid or diminish any loss or damage to the insured aircraft on January 2, 1949, when said aircraft was wrecked in an attempted take-off from Boeing Field in that said Leland negligently, carelessly and recklessly caused the acting pilot of the insured aircraft to attempt to take off in flight in dangerous weather conditions and when said insured aircraft had an accumulation of ice, snow and frost on the

tiffs were not entitled to relief on either claim and judgment was accordingly entered for defendants appellees.

Upon this appeal appellant administrator[3] points out that the court's finding of a breach of conditions has reference solely to the third condition above quoted, namely, the one relating to the use of due diligence. He contends that the court misconstrued the purpose and effect of this condition (3) in that it was not intended to exclude insurance coverage as to any loss or damage caused by the negligence of the assured, but rather was designed merely to prescribe the duties of the assured with regard to mitigating loss or damage and to securing the safety of the aircraft after the accident had occurred. He says that the language of condition (3) is not aptly worded to accomplish the result at which the trial court has arrived, and that a fair reading of that condition will compel an adoption of appellant's construction of it. Appellant says that this construction accomplishes a reasonable result, in that it would serve a useful purpose without forfeiting the rights of the assured to the protection which he would normally expect from a policy of this general type.

Appellant further argues that to give this condition (3) the interpretation which has been applied by the trial court, an interpretation which would wholly exclude coverage where loss was caused by the assured's negligence, would defeat the primary purpose of the policy. He points out that the policy must be construed as a whole and in the light of its intent and purpose as gathered from a perusal of the entire instrument. He says that to construe the policy as not covering any liability to third persons in cases where the assured was guilty of negligence, would result in the absurdity of nullifying all coverage under this part of the policy,—that a person who purchases liability insurance necessarily expects to be protected against the consequences of his own negligence which, generally speaking, is the only occasion upon which liability may exist. Appellant says that to avoid such an absurdity, the policy should not be so construed as to make assured's negligence a defense in the absence of such clear and explicit language as to exclude any other possible construction. He calls attention to numerous decisions holding that conditions, exceptions and exclusions from coverage will be strictly construed against the insurer, and that where language of the policy is doubtful, it should be construed against the one who chose its phraseology.

We are, however, impelled to agree that the trial court's construction of condition (3), insofar as it affects the appellant's first claim, that is to say, his claim for loss of or damage to the airplane, was correct, in view of the controlling decisions of the Supreme Court of the State of Washington. In Isaacson Iron Works v. Ocean Acc., etc. Corp., 191 Wash. 221, 70 P.2d 1026, the insurer was sued upon its public liability policy containing coverage against liability for property damage to third persons. The assured was a contractor which undertook to erect a steel frame upon the roof of a building. Its workmen left uncovered openings in the roof through which rain entered the building, damaging property belonging to the

upper surface of its wings and fuselage and had icicles hanging to its under surfaces, which conditions materially impaired the lifting qualities of its wings. That each and all of said conditions made it extremely unsafe to attempt to fly said aircraft, and as to all of said conditions the said assured owner personally was forewarned and had or should have had personal knowledge thereof.

"X. That all damage caused in said crash to said insured airplane and the revetment hangar located on Boeing Field which said airplane struck at the time of said crash, was proximately caused by the negligence of said Leland and by the failure of said Leland to use due diligence in the operation of said airplane as hereinabove set forth.

"XI. That in operating said airplane in the manner and under the conditions set forth above, the assured violated the express terms and conditions of said contract of insurance."

3. The appellants other than the administrator were joined merely because they were mortgagees of the plane.

building owner. There, as here, the insurer declined to defend the suit brought against the assured contractor; damages were recovered against the assured and the suit upon the policy followed. The policy contained a provision strikingly like that in the matter now before us. It provided: "(1)(a) The Assured agrees to use due diligence and exercise reasonable care to avoid doing damage to property of others." [191 Wash. 221, 70 P.2d 1028]. The Washington court reversed a judgment upon a verdict in favor of the assured and directed the action dismissed. It held that the judgment against the assured had established the fact of the assured's negligence, and that under the quoted language of the policy, the assured could not recover on the policy where damage to the third person's property had resulted from the assured's own negligence. The court said: "Nowadays many policies are written which by their terms protect the insured against his own negligence. The ordinary automobile indemnity coverage and insurance against fire are of this class. Such policies are not against public policy. Nevertheless, the theory of insurance which protects the insured against damage to a third person resulting from accident occurring in the course of the insured's operations, but which does not protect the insured against the result of his own negligence, is perfectly reasonable. It is for the insurer to determine what insurance he will write for a certain premium, and for one desiring insurance to determine whether or not any given policy affords him protection which he desires, and for which he is willing to pay the premium demanded. * * * There is nothing essentially illogical or even unreasonable in a provision to the effect that the insurer shall not be liable in case the insured be guilty of negligence.

That provision of the policy must either be given effect according to its plain language, or by judicial interpretation written out entirely. If in the case at bar respondent may recover against appellant, it is difficult to imagine what respondent's agreement to exercise reasonable care and use due diligence means. The words are plain and scarcely susceptible of construction. To limit the language by judicial construction appears unreasonable."

That decision appears to be in line with what we might call a "literal" rule of construction of insurance policies which appears to be the established rule of the State of Washington. Thus, in the recent case of Hamilton Trucking Service v. Automobile Ins. Co., 39 Wash.2d 688, 237 P.2d 781, 782, a policy issued to the owner of a truck listed among the perils insured against: "accidental collision of motor truck or trailer, with any other automobile, vehicle or object". When the truck in question was carrying a high load and was being driven through an underpass, the clearance was inadequate and the articles on the top of the load were damaged by coming in contact with the framework of the underpass. In denying a right of recovery on the ground that the load and not the truck was what collided with the other object, the court declined to follow decisions in some seven other states in which recovery had been permitted under similarly worded policies, and where the collision was of the load with another object. The Washington court disapproved the approach which those cases had adopted in undertaking to ascertain the purpose of the policy and thence concluding that what the parties contemplated was protection against this sort of loss.[4] The court said 237 P.2d at page 783: "We have not adopted the lines of reasoning found in the cases cited

4. The court said, 237 P.2d 781, 783: "In general they took the position that even though the language used in the policy then under consideration was not ambiguous, nevertheless the use of certain well-established rules of interpretation and construction of insurance contracts was warranted, and that the intent of the parties to the insurance contract should be ascertained. The thought was expressed that manifestly the purpose of the insurer was to protect the insured against loss or damage to his property while being transported, and with such thought as a foundation the theories advanced were that the risk coverage provision was capable of two interpretations and the one most favorable to the insured should be adopted; that inasmuch as the policy was prepared by the insurer it

by respondent in order to determine the intent of the parties, or what they may or must have contemplated when making an insurance contract with reference to the extent of the risk coverage when it was clear that the words were used in their ordinary sense or meaning, nor when the language used was plain and unambiguous. * * * We have taken the position in such matters that a rule of construction should not be permitted to have the effect to make a plain agreement ambiguous and then construe it in favor of the insured. * * * We cannot avoid feeling as we read the cases cited by respondent that those courts have created ambiguities where none existed and have then used rules of construction to determine the intent of the parties and what they must have contemplated, thus enlarging the risk coverage of the insurance policies under consideration."

■ We must, we think, follow the Isaacson Iron Works case, supra. But it should be noted that condition (3) quoted above does not purport to apply to anything other than the loss of or damage to the aircraft. It says: "(3) The assured shall use due diligence and do and concur in doing all things reasonably practicable to avoid or diminish any loss of or damage to the *property hereby* insured * * *." (Emphasis supplied.) We do not understand the appellees to urge that the condition with respect to due diligence furnishes it any defense to the second claim relating to liability to King County. To the extent that the trial court undertook to hold that breach of condition (3) was a defense to the second claim or cause of action we think it was in error.

Appellees say, however, that the court arrived at a correct conclusion for the reason that the evidence shows without conflict that there was a breach of conditions (1) and (2); that although the trial court made no finding thereon, the aircraft attempted to take off at a time when

it was carrying a load approximately 28% in excess of the limits permitted under the regulations prescribed by the Civil Aeronautics Authority for this airplane; that such overloading not only constituted negligence per se, but also brought about a violation of the first and second conditions mentioned. The first condition requires that at the commencement of each flight the plane "shall have a valid and current airworthiness certificate issued by the Civil Aeronautics Authority". Although it is not questioned that a certificate of the kind mentioned had been issued for this plane, yet appellees' position appears to be that the overloading operated to invalidate the certificate of airworthiness.

■ We cannot come to any such conclusion without rewriting the policy. Had it been intended to make this first condition one which prohibited overloading or other violations of applicable regulations, it would have been a simple matter to find appropriate words to say so. Appellees cite no authority for the construction which it attempts to place upon the phraseology used in stating the first condition, and we do not think their position in that respect is warranted.

Appellees further contend, however, that such overloading was a violation of the second condition mentioned, the one which requires that the aircraft should be operated "in accordance with the operations authorized as set forth in the operations record of the aircraft". The parties are in disagreement as to what was meant by "operations record of the aircraft". Appellant says that this means the record of the plane's operations kept by the operator, namely, the operations log of the aircraft. Appellees call attention to a Regulation (13 Fed.Reg. 474) adopted January 27, 1948, which provides than an aircraft "shall not be operated unless there are available in the aircraft, appropriate aircraft operating limitations set forth in a form and manner prescribed by the Ad-

should be construed against it; that to confine the risk coverage to collision of the vehicle with some object would reach an absurd result and one not contem-

plated by the parties; that the word 'collision' was intended as descriptive of the way and means of sustaining loss rather than a limitation of liability."

ministrator. \* \* \* Nor shall such aircraft be operated otherwise than within its prescribed operating limitations." Appellees point out that this regulation which was in effect approximately one year preceding the accident, and six months before the execution of the insurance certificate here in question, superseded an earlier regulation which required an "aircraft operation record prescribed and issued by the Administrator" to be attached to the airworthiness certificate. That earlier regulation provided for limitations prescribed by the Administrator to be included in such record.

It is not disclosed that any such "aircraft operation record" was in fact prescribed by the Administrator for this plane. Appellees, however, argue that the assured owner of the plane must have known that the language used in condition (2) was intended to refer to "operation limitations" as defined in the later regulation mentioned. We think that the answer to this suggestion must be that the condition did not so state, and we are not permitted to read into the insurance certificate something which the parties may be supposed to have intended but which they have not stated.

Conditions such as those we are here considering are in the nature of conditions subsequent, and the burden is upon the insurer to prove that they have been breached. Title Guaranty & Surety Co. v. Nichols, 224 U.S. 346, 351, 32 S.Ct. 475, 56 L.Ed. 795; Western Casualty & Surety Co. v. Weimar, 9 Cir., 96 F.2d 635; Hill v. Great Northern Life Ins. Co., 186 Wash. 167, 57 P.2d 405; Port Blakely Mill Co. v. Hartford Fire Ins. Co., 50 Wash. 657, 97 P. 781. We think such burden has not been sustained here.

We are of the opinion that the record requires a judgment for the appellant administrator upon his second claim for the amount of the judgment recovered by King County, and for his expenses incurred in the defense of the King County action, with interest upon the amount of such expenses.

The judgment of the court below is modified accordingly, and the cause is remanded for further proceedings in accordance with this decision. The appellant shall recover one-half his costs upon this appeal.