[No. 32179. Department One. April 2, 1953.]

PHILADELPHIA FIRE AND MARINE INSURANCE COMPANY, *Plaintiff*, ROYAL INSURANCE COMPANY, *Respondent*, v. THE CITY OF GRANDVIEW *et al.*, *Defendants*, NORTHWEST CASUALTY COMPANY, *Appellant*.[1]

[1]Reported in 255 P. (2d) 540.

*Rode, Cook, Watkins & Orth* and *Richard D. Hamilton,* for appellant.

*Walter V. Swanson, Douglas A. Wilson,* and *Gavin, Robinson & Kendrick,* for respondent.

WEAVER, J.—This action is a garnishment.

Respondent, Royal Insurance Company, Ltd., has an unsatisfied judgment against defendants, the city of Grandview and Earle Bugge, the superintendent of its water department. Respondent seeks to recover the amount of the judgment from appellant, Northwest Casualty Company, as garnishee defendant. The action is based upon a comprehensive public liability insurance policy written by appellant for the city of Grandview. The policy was in effect at the time of the occurrence, an explosion in the home of

Frank C. Russell in Grandview, which gave rise to the judgment.

Respondent insured the home of William Hunt against the hazards of fire and explosion. The Hunt residence was adjacent to the Russell house. The explosion in the Russell house damaged the Hunt residence.

An action by respondent, as assignee of William Hunt (and others), resulted in a judgment against the city and Earle Bugge. This judgment was affirmed on appeal. *Russell v. Grandview*, 39 Wn. (2d) 551, 236 P. (2d) 1061.

Appellant answered the writ of garnishment. It denied any indebtedness to the city. Respondent controverted the answer by reply, setting forth the policy of public liability insurance.

The basis of the judgment against the city and Earle Bugge is summarized in finding of fact No. 8 of the instant case. No error is assigned to it. We accept it as setting forth established facts.

"8. That prior to the explosion of October 26, 1949 the defendants [city of Grandview, a municipal corporation, and Earle Bugge] negligently and carelessly permitted a highly inflammable and explosive methane gas to be continuously introduced, pumped into, and carried through the pipes of its water system to dwellings within the city of Grandview and including the dwelling of Frank Russell, and the defendants, by and through the acts and conduct of Earle Bugge, negligently and carelessly directed said Russells to open their faucets and permit said gas to enter into and fill the Russell residence, when they, the defendants, knew, or should have known that it would be ignited and would explode and cause damage, and that it did do so, thereby damaging the adjacent Hunt residence. That for approximately two and one-half hours on the morning of October 26, 1949, said gas entered the Russell home from the pipes of the water system of the City of Grandview, and that it was this accumulation of gas which exploded and caused the damage. That liability in this case arises out of the active negligence of the city and not by reason of failure to act after having actual or constructive notice of the existence of a danger."

At the trial, the court admitted in evidence, over objections of appellant, the entire record of the proceedings and

testimony in the principal action, to which appellant had not been a party.

The comprehensive public liability insurance policy issued by appellant to the city of Grandview provided:

"Northwest Casualty Company . . . hereby agrees: I. To Pay on behalf of the Insured, all sums which the Insured shall become obligated to pay by reason of the liability imposed upon him [it] by law . . . (c) for damages because of injury to or destruction of property, including the loss of use thereof, caused by accident."

Appellant refused to defend the principal action and denied any indebtedness to the city under the writ of garnishment because the insurance policy contained an endorsement reading as follows:

"EXCLUSION OF PRODUCT LIABILITY. Exclusions (A) and (B) below are applicable only when checked.
x (A)  Bodily Injury
It is agreed that the policy does not apply to bodily injury, sickness or disease, including death at any time resulting therefrom;
x (B)  Property Damage
It is agreed that the policy does not apply to injury to or destruction of property (including loss of use of such property); if caused by the handling or use of, or the existence of any condition in goods or products manufactured, sold, handled or distributed by the Insured when the occurrence takes place away from premises owned, rented or controlled by the Insured, and after the Insured has relinquished possession of such goods or products to others or after the operations have been completed or abandoned at the place of occurrence (other than pick up and delivery, and the existence of tools, uninstalled equipment, and abandoned or unused material).

"Subject otherwise, to all the terms and conditions of the policy. . . ."

Appellant appeals from a judgment against it as garnishee defendant.

We consider first appellant's assignment of error directed to the admission in evidence of the entire record of the proceedings and trial in the principal tort action. The record admitted included pleadings, orders, cost bills, briefs, proposed instructions to the jury, jury instructions given,

various exhibits—including numerous photographs of the results of the explosion, verdicts of the jury, judgments on the verdicts, and the statement of facts.

Respondent, as garnisher, has no greater rights against the appellant garnishee than the city has. *Holthe v. Iskowitz,* 31 Wn. (2d) 533, 197 P. (2d) 999, and cases cited. Were the city (the insured) maintaining an action against appellant, it would have to bring itself within the terms of the policy by competent evidence before it could establish appellant's liability thereon. *Isaacson Iron Works v. Ocean Acc. & Guarantee Corp.,* 191 Wash. 221, 70 P. (2d) 1026.

In order to establish its right to recover under the insurance policy, respondent must prove: (a) that a liability has been imposed upon the city by law; (b) that the facts upon which liability was based established a situation within the terms of the policy; and (c) the amount of the judgment.

Appellant concedes that the "judgment roll" of the principal action is admissible in evidence. It limits its argument to the inadmissibility of the statement of facts. Hence, we consider only that part of the assignment of error which is argued. The assignment of error does not raise the question of *res judicata* or the doctrine of collateral estoppel, and we do not discuss them.

If it were impossible to determine the *scope* of the issues in the principal action from the judgment roll, or if the judgment roll did not disclose the ultimate facts and the theory upon which liability was based, then testimony given in the principal action would be admissable only *for that purpose.* It could not be used to establish a fact which must be proved in the present action. It has no intrinsic proving power. *Spokane v. Costello,* 42 Wash. 182, 84 Pac. 652; 5 Wigmore on Evidence (3d ed.) 94, § 1387 (2).

In this instance, however, the judgment roll contains sufficient documents to disclose that the liability imposed upon the city arose from a situation within the terms of the public liability policy. The statement of facts was not necessary to determine the scope of the principal action; it was not necessary to define the issues of the garnishment

proceeding; it could not meet the requirements of Rem. Rev. Stat., § 1247, RCW 5.20.060, relating to prior testimony of a deceased or absent witness. *Isaacson Iron Works v. Ocean Acc. & Guarantee Corp., supra,* is not authority supporting its admissibility. A reference to the original record of that case in this court discloses that a portion of the statement of facts in the original action was offered in evidence but rejected.

It was error, under the facts of this record, to admit the statement of facts of the principal action in evidence.

■ However, there is a wealth of testimony, competent and relevant, tested by cross-examination in the trial record, upon the issues of fact raised by the controverted answer to the writ of garnishment. In part, the statement of facts of the principal action was merely corroborative of competent evidence; in part, it contained immaterial evidence. This action was tried to the court. Under the circumstances, its admission was harmless and does not constitute reversible error, since the issues were supported by other competent evidence. *Evich v. Kovacevich,* 33 Wn. (2d) 151, 162, 204 P. (2d) 839, and cases cited; *Bond v. Wiegardt,* 36 Wn. (2d) 41, 55, 216 P. (2d) 196.

The trial court found:

"That the injury to the property of said Hunt was not caused by the handling or use of, or the existence of any condition in goods or products manufactured, sold, handled or distributed by the City of Grandview. That the only goods or products manufactured, sold, handled, or distributed by the insured to the Russell residence was water, and the methane gas which entered the Russell dwelling by reason of the negligence of defendants aforesaid was not a condition in the water being sold by the defendants to the Russell residence, but explosive gas without water was continuously entering into said Russell residence."

■ ■ Appellant assigns error to the court's finding that "explosive gas without water was continuously entering the Russell residence." The record discloses that the evidence does not clearly preponderate against this finding. In fact, it is supported by substantial evidence. We will not disturb it. *Detjen v. Detjen,* 40 Wn. (2d) 479, 244 P. (2d) 238.

Before considering appellant's remaining assignments of error, we emphasize that for two and a half hours prior to the explosion, gas and not water was entering the Russell house from the faucets. It was this gas which exploded, not water. The negligence of the city in permitting a dangerous concentration of gas to be introduced into the house is the basis of the judgment against the city. It is true that the gas was negligently introduced into the house by the same vehicle that delivered water to the house; but it does not necessarily follow that it thus attained the same status. This is not a case involving the sale of a contaminated product. It is this fact which distinguishes it from the authorities cited by appellant, such as the case of *Lyman Lbr. & Coal Co. v. Travelers Ins. Co.*, 206 Minn. 494, 289 N. W. 40, wherein dynamite caps had been mixed with coal.

Appellant assigns error to the court's finding (a) that the injury to Hunt's property was not caused by the handling or use of, or the existence of any condition in the goods or products manufactured, sold, handled, or distributed by the city; (b) that the only goods or products manufactured, sold, handled, or distributed by the insured to the Russell residence was water; and (c) that the methane gas which entered the Russell dwelling, by reason of the negligence of the insured, was not a condition in the water sold by the city to Russell.

These findings could have been termed conclusions. There is little dispute as to the facts from which the statements stem.

It is easy to define and refine the terms used in the "Product Liability" exclusion endorsement, and to put the definitions and terms together in various combinations, until the result is confusion. But, as the trial judge said in his memorandum opinion:

"Contracts of insurance, like other contracts, must receive a practical, reasonable and fair interpretation consonant with the apparent object and intent of the parties. Strained or forced construction of insurance contracts are to be avoided and a policy should not be interpreted either so narrowly or technically as to frustrate its obvious design

or so loosely or artificially as to relieve the obligor from a liability fairly within the scope or spirit of its terms."

The crux of the situation is: Was the damage (resulting in the liability of the city) caused by a product which the city manufactured, sold, handled, or distributed, within the meaning and contemplation of the product liability exclusion endorsement of the policy? Every argument advanced by the appellant to relieve it of liability under the policy is based upon an affirmative answer to this question.

█ The city did not manufacture gas. The city did not sell gas. (We give no weight to appellant's argument that the Russells were purchasing anything that the water wells produced.) Had the city "handled or distributed" the gas *within the contemplation of the policy*? We think not.

To handle or to distribute, within the meaning of the insurance policy, implies a conscious control over and a conscious intent to parcel out whatever is to be distributed. It does not mean to scatter by accident. The city was selling, handling, or distributing water—not gas. It follows that the exclusion endorsement does not exempt the appellant from the liability which resulted from the active negligence of the city in permitting a dangerous, inflamable gas, instead of water, to be conducted through its water system. Since no water had been delivered for two and a half hours prior to the explosion, the gas was not a "condition in" the water.

Although the facts are somewhat different, the language of the court in *McGrahan v. Public Indemnity Co.*, 269 Ill. App. 361, is helpful in reaching our conclusion.

Defendant had written a public liability policy covering plaintiff's premises. The policy contained a "Food and Drink Endorsement" which excluded coverage for any loss suffered "by reason of any food or drink *sold or dispensed* by the assured." (Italics ours.)

A customer was burned by hot boiling coffee negligently spilled on her. She sued the insured. The insurance company refused to defend the action on the ground that the liability arose "by reason of food or drink sold or dispensed by the assured." Judgment having been entered in favor

of the customer, plaintiff brought action against the insurance company. The trial court sustained a demurrer to plaintiff's complaint. In overruling the demurrer, the appellate court said:

"The language used in the rider sets forth that the company will not be liable for damages on account of bodily injuries sustained by reason of any food or drink sold or dispensed by the assured. The coffee in question was not sold or dispensed to the customer who was injured, but the injuries were purely the result of an accident. It might be argued that coffee was sold and dispensed by the assured, but it appears to this court that the evident purpose of the rider was to exempt the company from those accidents which might arise by reason of the partaking of food or drink sold by the assured, such as food poisoning. . . . We do not believe the rider in question covered a situation, as charged in the declaration, where a customer was injured while upon the premises and by reason of an accident such as is charged in the declaration. *At the time of the accident the coffee was not being sold or dispensed.* [Nor was gas being sold or dispensed in the instant case.] It certainly does not appear to have been sold and, if dispensed, it was in a manner strange to the trade." (Italics ours.) (p. 364)

We conclude that the product liability exclusion endorsement does not cover the unique situation of this case.

█ Appellant assigns error to the court's conclusion that its liability came into existence upon entry of the judgment on December 16, 1950. This assignment is not well taken. The insurance policy is one of liability and not of indemnity. It rendered the appellant immediately liable to the insured upon recovery of a judgment against the city. *Landaker v. Anderson,* 145 Wash. 660, 261 Pac. 388.

The judgment is affirmed.

GRADY, C. J., MALLERY, SCHWELLENBACH, and DONWORTH, JJ., concur.

_____

May 19, 1953. Petition for rehearing denied.