[No. 40528.   En Banc.   April 9, 1970.]

DAVID M. WAITE et al., *Appellants*, v. AETNA CASUALTY AND SURETY COMPANY, *Respondent.**

*Moore, Walstead, Hallowell & Mertsching, Charles T. Mertsching,* and *Alan Hallowell,* for appellants.

*Studley, Purcell, Spencer & Arkell, Robert B. Arkell,* and *Wayne D. Purcell,* for respondent.

ROSELLINI, J.—In this action, the appellants seek to hold the respondent liable for all of the damages which they were required to pay in the settlement of a lawsuit brought by a purchaser of one of their products. They also sue for the attorneys' fees and costs incurred by them in that ac-

*Reported in 467 P.2d 847.

tion. They rely upon the provisions of a comprehensive liability policy issued by the respondent to the appellants.

The policy in question insured the appellants against liability for damage to and loss of use of property caused by accident. It excluded coverage of liability for damage to the appellants' own products "out of which the accident arises."

The appellants built a steel logging tower for one Kelley. A necessary part of the tower was a "fairlead," a device over which lines were strung for the pulling of logs. The fairlead was attached to the top of the tower. The fairlead which was installed on the tower was taken from a yarder, belonging to Kelley, on which the portable tower was to be mounted. The appellants made some modifications of the fairlead in order to attach it to the tower and the attachment was made with screws.

Shortly after the tower was delivered, it was found that the lines were not working properly, and the appellants spent some time correcting this problem. On the first day that it was again put in use, while Kelley was dragging a load of logs, the fairlead ripped loose from its mounting on top of the tower and fell to the ground, snapping Kelley's cable lines, damaging the fairlead beyond repair, and stopping Kelley's logging operation from March 18 to April 12, 1966, when the installation of a new fairlead was completed.

Kelley brought suit against the appellants, listing in his amended complaint specific items of damage as follows:

1. Loss of profits through deprivation
   of use of tower:
   (a) March 4 through March 17      $  657.00
   (b) March 18 through April 12     3,080.00

   Total loss of profits                       $3,737.00

2. Labor costs in raising and lowering
   tower:
   March 4 through March 17                        633.60

3. Damage to wire rope:                          1,260.00

4. Parts replacement (hydraulic system):            35.00

5. Replacement of fairlead assembly:
   (a) Parts and freight        3,054.46
   (b) Labor                     522.50

                               3,576.96

            Total              $9,242.56

With respect to the damages alleged in the amended complaint, it was undisputed that items 1(a), 2 and 4 were not covered by the terms of the policy. The respondent admitted coverage of item 3 but denied that the policy covered the remaining items. The respondent advised the attorney representing the appellants that it would provide a defense for the item admittedly covered and suggested that the attorney represent the interests of both the appellants and the respondent, with a proportionate part of the expense being borne by the respondent. This offer was rejected on the ground that there was a possible conflict of interest. Subsequently, the respondent offered to provide additional counsel to assist in the defense of the action, but this offer was rejected by the appellants.

The suit was settled by the attorney for the appellants for a lump sum of $5,500, with no allocation being made to the various items of damage. The respondent paid to the appellants the sum of $1,460 to be allocated to the damage to the guy wires and loss of use attributable to that damage, and this amount was paid to Kelley as a portion of the settlement.

This action was brought to obtain reimbursement for the remainder of the amount paid by the appellants in settlement of the suit and for the attorneys' fees incurred by the appellants after March 30, 1967.

The trial court determined that the respondent was liable for the loss of use of the tower from March 18 through April 12 (item 1(b)) but was not responsible for damage to the fairlead (item 5). The court further found that the original claim for loss of profits due to loss of use of the tower, item 1(b), was one third of the total claim. It held that, since there was no allocation made by the parties to the settlement, it should be assumed that the claims were

reduced pro rata and it accordingly held the respondent liable for one third of the amount of the settlement, in addition to the amount which it had already paid for the damage to the wire rope and loss of profits attributable to that damage. The respondent was also ordered to pay one third of the appellants' attorneys' fees.[1]

■ The appellants urge as their first contention that the court should have held the respondent liable for the replacement cost of the fairlead (item 5). The burden is upon the plaintiff, in an action on an indemnity policy, to show that the loss suffered comes within the terms of the policy. *Isaacson Iron Works v. Ocean Accident & Guarantee Corp.*, 191 Wash. 221, 70 P.2d 1026 (1937).

The theory of the appellants is that the fairlead was not a product of theirs out of which the accident arose. In the recent case of *S. L. Rowland Constr. Co. v. St. Paul Fire & Marine Ins. Co.*, 72 Wn.2d 682, 434 P.2d 725 (1967), this court construed a comprehensive liability policy of the type involved in this action, and particularly construed the language of the clause excluding coverage of damage to or destruction of any product of the insured "out of which the accident arises." We held that where the thing produced by the insured is a large item composed of many component parts (in that case a dwelling house), and damage arises out of one or more of those component parts, only the *component parts* out of which the accident arises are excluded. While the fact was not expressly noted in that case, it is evident that where the thing produced by the insured

---

[1]Since the respondent paid the full amount claimed in the amended complaint for the damage to the wire rope, plus $200 for the loss of use attributable to that damage, it would appear that the respondent actually paid more than that portion of the settlement which is attributable to this item. The claim for the rope was $1,260, or approximately 14 per cent of the entire claim. Fourteen per cent of the settlement is $572. The trial court made no allocation of attorneys' fees to this item but the appellants do not assign error to this apparent oversight. Neither has the respondent cross-appealed assigning error to the court's failure to give it credit for the apparent overpayment. Any error in regard to this item has been waived by both parties.

is a building—a structure not ordinarily referred to as a "product," incidentally—it is composed of many products.

It is the theory of the appellants that, according to the holding of that case, the logging tower which they built for Kelley was, like the house which the insured built in the *S. L. Rowland Constr. Co.* case, a structure composed of many "products." We need not decide whether a logging tower is a structure like a house—not a single product itself but a composite of products. Assuming that it is, the appellants cannot prevail in their contention that damage to the fairlead was covered by the policy. According to the findings of fact, which are supported by credible testimony in the record, the fairlead itself was a component part out of which the accident arose.

The appellants' claim that the fairlead was not their product, because they did not manufacture it but only modified it and attached it to the tower with an adapter and cap screws. Further, they claim that it was damaged because the cap screws were not strong enough and gave way under the stress placed upon them by the logs which were attached to the lines running over the fairlead, and which became hung up while they were being dragged through the woods.

The trial court found, however, that, under the stress, the fairlead itself broke near its flange at the same time that the cap screws broke. The appellants make no attempt to show that this finding was against the weight of the evidence.

Thus, whether or not the fairlead was a product of the appellants, the undisputed finding of fact is that it was a product or a "component part" out of which the accident arose. This being the case, the trial court correctly found that it was excluded from coverage under the terms of the policy.

It is next contended that the respondent should be held liable for the entire amount of the settlement as well as all of the attorneys' fees, because it refused to defend the entire suit. While defense of the suit was tendered to the respondent, it is apparent that the appellants' attorney rec-

ognized that the respondent was not in a position to defend against the claims which were concededly not covered by the policy and that he himself could not properly represent the respondent's position because of a conflict of interest.

It is the well-recognized rule that an issuer of an indemnity policy who reserves the right and assumes the duty to defend lawsuits, is obliged to defend a suit alleging facts which, if proven, would render the insurer liable. *Tieton v. General Ins. Co. of America*, 61 Wn.2d 716, 380 P.2d 127 (1963); *Lawrence v. Northwest Cas. Co.*, 50 Wn.2d 282, 311 P.2d 670 (1957). On the other hand, this court has held that, where the insurer refuses to defend a lawsuit on the ground that the claim alleged is not covered by the policy, and the claim is in fact one not covered, the insurer is not responsible for the insured's expenses in defending the suit. *Kong Yick Inv. Co. v. Maryland Cas. Co.*, 70 Wn.2d 471, 423 P.2d 935 (1967); *Isaacson Iron Works v. Ocean Accident & Guarantee Corp.*, *supra*. For obvious reasons, this is the universal rule. *See* Annot., 49 A.L.R.2d 694 (1956), at 703.

Since the lawsuit brought by Kelley against the appellants involved several claims, some of which were concededly not covered by the policy and some of which were within the coverage, the respondent was faced with a dilemma when defense of the suit was tendered to it. It had an obligation and a right, under the provisions of its policy of indemnity insurance, to conduct the defense against those claims which came within the policy coverage, but it had neither the duty nor the right to defend against the claims which were undisputedly outside the coverage. It attempted to resolve this dilemma by foregoing its right to defend against the claims which were covered and offering to pay the appellants' costs for the defense of the one claim which it admitted was covered. This offer was refused by the appellants.

The trial court found that the respondent was obliged to defend not only against the claim which it had acknowledged its obligation to defend, but also against another claim which the court found was covered by the policy—

the claim of damages for loss of use of the tower during the period it was under repair after the accident. It required the respondent to pay the costs and attorneys' fees which it found were referrable to the defense of that claim asserted by Kelley.

■ The rule is that where an insurer wrongfully refuses to defend, it will be required to pay the judgment or settlement to the extent of its policy limits and also to reimburse the insured for his costs reasonably incurred in defense of the action. *Lawrence v. Northwest Cas. Co., supra.* The trial court applied this rule in holding the respondent liable for costs of defense of the claim for damages for loss of use of the tower, as well as for the amount of the settlement attributable to that claim. But the appellants earnestly contend that the respondent should be required to reimburse them for all of their expenses in defending the entire suit, and for all of the amount of the settlement, even though it comprised multiple claims, some of which were covered by the policy and some of which were not.

None of the authorities cited by the appellants support this proposition. The rule which can be gleaned from them is that, where a claim for damages is asserted upon more than one theory of recovery, and the suit is settled or goes to the jury with no interrogatories which will enable the jury to state the findings on which it bases its verdict for the claimant, an insurer who refused to defend the action is estopped to assert that the claim was not covered.

The cases are collected in Annot., 41 A.L.R.2d 434 (1955). Of the cases cited there, the one most analogous to the case here is *Employers Mut. Liab. Ins. Co. v. Hendrix,* 199 F.2d 53 (4th Cir. 1952), it being a case in which different injuries were asserted, one of them within the policy coverage and the other outside. The claims were for assault and for slander. The suit was settled for a lump sum, and the appellate court held that the insurer was liable only for that portion of the compromise which compensated the claimant for the assault. The court did not consider the

question whether there should be an allocation of attorneys' fees.

In the case of *Globe Navigation Co. v. Maryland Cas. Co.*, 39 Wash. 299, 81 P. 826 (1905), relied upon by the appellants, this court held that an insurer who directed the insured to employ attorneys to defend an action instead of assuming the defense itself, was obliged to reimburse the insured for the amount of the judgment against it, even though the judgment was entered upon a cause of action not covered by the policy. This court said that the insurer had a duty to defend the action, there being an allegation that the injuries of the plaintiff, a seaman injured in the course of his employment, were caused by negligence of the insured, as well as an allegation that the insured breached its maritime contract to provide medical services.

The court which tried the seaman's action in that case held that the insured was not negligent but granted recovery for the alleged breach of contract to provide medical services. The insured directed the attorneys to file notice of appeal, but the insurer advised it to dismiss the appeal and said that it would pay the judgment. Later, when it discovered the ground upon which the seaman's judgment was granted, the insurer refused to pay the judgment. The insured brought suit to compel such payment.

Holding that the insurer had a duty to keep itself informed of the progress of the trial, and also that it had constructive notice if not actual notice of the nature of the judgment when it directed the insured to have the appeal dismissed and advised that it would pay the judgment, this court determined that the insurer was estopped to deny its liability.

That case was decided upon its peculiar facts, which gave rise to an estoppel, the insurer having made representations to the insured which induced it to give up its right to appeal the case. This court recognized that the insurer would not have been obliged to pay the judgment otherwise. Also, while it was held that the insurer was obliged to pay for the defense of the action, this again was because

of the particular conduct of the insurer in directing the course of the defense in its own interest, rather than that of the insured. There is no holding that attorneys' fees should never be allocated in an action where multiple injuries are alleged.

As the respondent points out, in cases of multiple claims, conflict of interest questions almost invariably arise, and a decision on the question whether to defend the action or direct the insured to defend it is not necessarily an easy one.

In the case of *Van Dyke v. White,* 55 Wn.2d 601, 349 P.2d 430 (1960), this court said that it is contrary to public policy for an attorney to represent the interest of his employer, the insurer, when it conflicts with that of his client, the insured. This means, of course, that where there is a conflict of interest, there must be at least two attorneys, if the interests of both parties are to be fairly represented. In this case, the insurer was willing to allow the insured's private attorney to represent its interest and to reimburse him for services rendered in defending at least one of the claims covered by the policy, but the attorney apparently recognized that he could not fairly assume the responsibility of representing the insurer as well as the insured, even with the former's permission.

The fact that in some cases the insurer is not in a position to conduct a proper defense for the insured does not mean that it cannot discharge its duty under the policy provisions. The duty to defend can be enforced by requiring the insurer to reimburse the insured for its costs in defending against the claim which, if proven, would be within the coverage of the policy.

That is the approach taken by the trial court in the instant case. The court recognized the dilemma of the respondent and also of the attorney for the appellants when faced with the problem of defending multiple claims. In the case of the claims which were clearly not covered, the respondent had neither the right nor the duty to defend. In the case of the claim which was concededly covered, it

acknowledged its liability for the damage and the costs of defense. In the case of one item, it mistakenly denied liability. A fourth item, the damage to the fairlead, involved a conflict of interest between the appellants and the respondent. If the latter could prove that the accident arose out of the fairlead assembly, the item was not covered. On the other hand, if the facts showed the accident to have been caused solely by faulty installation, the damage to the fairlead itself would have been covered, assuming the tower to be a composite of products, rather than a single product.

We are of the opinion that the respondent's decision to forego its own right to conduct the defense of a part of the action and place the whole matter in the control of the appellants' attorney was a reasonable one under the circumstances. While it should not be relieved of any of its contractual obligations, it should not be penalized for pursuing a course which favored the interest of its insureds rather than its own interest. There is no showing nor any claim of bad faith.

In the amended complaint setting forth specific items of claimed damage, the trial court had a reasonable basis for allocating the damages as well as the attorneys' fees. There is no contention that any of the claims was ill founded. We know of no rule of law which would impose liability upon the respondent for claims against which it gave no insurance or for attorneys' fees incurred in defending against them. The appellants have advanced no reasons why justice or public policy requires the adoption of such a rule.

We are convinced that the trial court made the proper disposition of the questions presented in this case and that the result is fair.

The judgment is affirmed.

ALL CONCUR.