**SUNBEAM TELEVISION CORP., Plaintiff,**

v.

**COLUMBIA BROADCASTING SYSTEM, INC., National Broadcasting Co., General Electric Property Management, Co. of Florida, Inc., WBC Broadcasting Co., and Alan Perris, Defendants.**

**No. 88–1046–CIV.**

United States District Court, S.D. Florida, Miami Division.

Aug. 25, 1988.

Michael Nachwalter, Miami, Fla., Allan Milledge, Coral Gables, Fla., for plaintiff.

Joel S. Perwin, Miami, Fla., Jerome J. Shestack, Philadelphia, Pa., for NBC, Gen. Elec., WBC and Alan Perris.

William B. Killian, Miami, Fla., for CBS.

## MEMORANDUM OPINION AND ORDER OF REMAND

SPELLMAN, District Judge.

THIS CAUSE comes before the Court upon Plaintiff's Motion for Remand. The background of this case, in brief, is as follows. The Plaintiff is the owner of a local South Florida television station, WSVN (Channel 7), which has been affiliated with Defendant NBC for around 25 years. The Plaintiff alleges that its long-standing relationship was a "joint venture," and that the continuation of this relationship was a prerequisite for the Plaintiff's future economic success.

In 1984, FCC regulations changed permitting national networks to own up to 12 local stations, servicing no more than 25% of household serviceable.[1] The national networks quickly and fervently began to compete for ownership of successful local stations.

In late 1985, a non-citizen of Florida, KKR, Inc., which possessed both a cable network operating in South Florida and, through its wholly-owned Florida subsidiary, Defendant WBC, a local television station WTVJ (Channel 4), was forced by FCC regulations to sell one of these two interests. KKR chose to divest itself of WBC and its local station, WTVJ, which had been affiliated with Defendant CBS.

Plaintiff alleges that KKR and Lorimar–Telepictures entered into a tentative contract for the purchase of WTVJ for $405 million. Subsequently, as the CBS/WTVJ contract allowed, upon change of local station ownership, CBS had the right to terminate the affiliation relationship upon 180 days notice to WTVJ prior to January 1, 1989—the contract's termination date. CBS allegedly threatened to terminate its affiliation with WTVJ, thereby substantially reducing the local station's value, if the local were not sold to it at a substantially reduced price. This thwarted the Lorimar purchase as Lorimar had contemplated purchasing a nationally affiliated local station.

Plaintiff alleges, CBS abused its right of termination to coerce KKR into selling WTVJ to CBS at a price substantially below its market value (as evidenced by Lorimar–Telepicture's offer of $405 million), specifically at prices of $170, $190, or $230 million. The average of these prices is approximately $197 million—less than half that agreed to by Lorimar. Needless to say, CBS's threat to terminate seriously reduced the value of WTVJ as an unaffiliated local commands far less for advertising and programming than does a local affiliated with one of the three national networks. To demonstrate that its termination threat was not a bluff, CBS obtained an option to buy WCIX (Channel 6), a local station with which CBS would affiliate itself if Plaintiff did not comply with CBS's demands.[2]

Thus, Plaintiff alleges that KKR and/or WBC realized that the only way to circumvent or to minimize the undervaluation of WTVJ's sale would be to solicit its sale to one of the other two national broadcasting

---

1. The vast majority of the "facts" as asserted herein are actually the Plaintiff's allegations. For expediency's sake, the Court will not repeat that each "fact" so mentioned is merely an allegation, and such reference by the Court in no way bars the Defendants in this or a subsequent action from contesting such facts, as the Court does not intent for its language to be construed as factual findings of any sort.

For the purpose of this Motion, however, as in the case of a Motion to Dismiss, the Court is to take the Plaintiff's allegations as true and then to decide whether the Plaintiff's allegations, taken as true, show that removal was improper. See B., Inc. v. Miller Brewing Co., 663 F.2d 545 (5th Cir.1981); Bobby Jones Garden Apartments, Inc. v. Suleski, 391 F.2d 172, 175 (5th Cir.1975).

2. CBS has since exercised its option and has purchased WCIX.

companies—NBC the present affiliate of WSVN—Plaintiff's former station. The pleadings and memoranda do not assert why National Network ABC was not solicited to compete with Defendant NBC, thereby introducing *some* element of competition into the sales transaction and conceivably resulting in a higher price, even if less than the $405 offered by Lorimar. The unexplained fact that only one of two comparable bidders was contacted, and that a sale was ultimately consummated at a price substantially below its market price, suggests the possibility of collusion between the parties named. By virtue of the limited number of nationals (three) in the television market, a national has a great deal of bargaining power and control of relationships and agreements between itself and local affiliate stations or their owners.

On January 16, 1987, NBC "and another subsidiary of GE" (presumably Defendant GEPMC of Florida, Inc.) allegedly announced that, subject to FCC approval (which was granted in September of 1987), they had agreed to purchase WTVJ (and its direct owner, KKR subsidiary Defendant WBC) from KKR for $270 million. NBC notified WSVN that its affiliation will be terminated as of January 1, 1989. Thus, WSVN will be without an affiliate for the first time in 25 years. NBC's purchase of WTVJ's at KKR's (or perhaps WBC's) solicitation, has rendered WSVN less valuable in that it is a less desirable vehicle for advertising and programming.

The Plaintiff's continued financial success was allegedly dependent upon the continuation of the 25 year affiliation relationship between WSVN and NBC. Moreover, NBC, which now has conflicting interests in the short term profitability of WSVN (with which it is affiliated until January 1, 1989) and the long term profitability of WTVJ (which it owns with Defendant GEPMC of Florida, Inc., although the station is affiliated with one of its two chief competitors and airs programming that directly competes with that of WSVN for audience share), has operated WTVJ to the benefit of NBC and GEPMC of Florida, and

to the detriment of the Plaintiff and WSVN.

Subsequent to the NBC/KKR sales agreement, it is alleged that CBS did not terminate its affiliation with WTVJ, now owned by its chief competitor, NBC. Nor did it challenge the sale before the FCC. As a result, since September of 1987, NBC has owned and operated one local station, WTVJ, affiliated with its competitor, CBS, which airs CBS programming directly in competition with the NBC programming presently being aired by WSVN under its affiliation contract with NBC which is still valid until the end of the year.

The Plaintiff alleges that in the course of purchasing WTVJ, NBC agreed or conspired with CBS that each would allow the other to become its affiliate in local television markets in order to facilitate the purchase of local stations at prices lower than those that would prevail in an open and competitive market. CBS has subsequently conditioned an affiliation agreement with WSVN upon the sale of the local to CBS and has threatened to purchase and affiliate with WCIX should WSVN refuse.

Florida Equitable Bill of Discovery

■ The Plaintiff instituted this proceeding as a "Pure Bill of Discovery," seeking no monetary damages or injunctive relief, but merely what it alleges to be necessary and otherwise unavailable information to enable it to identify the proper parties against whom and the proper legal theories under which to subsequently sue for relief to which it is allegedly entitled under the facts of the case. The Defendants removed this action to Federal Court claiming both the existence of Diversity and Federal Question Jurisdiction. The Plaintiffs contest both grounds of Federal Jurisdiction and seek to remand.

Although the proposition has not been dealt with frequently in recent years, Florida Courts have specifically stated that the Florida Civil Rules of Discovery do not extinguish the long-standing and distinct right to file a Bill of Discovery in equity, that under the proper circumstances, permits a Plaintiff to seek nothing more than otherwise unavailable information neces-

sary to enable the Plaintiff to continue in the prosecution of, or to institute a suit for relief under a cognizable theory against the appropriate defendants. *See First National Bank of Miami v. Dade–Broward Co.*, 125 Fla. 594, 171 So. 510 (1937); *National Car Rental v. Sanchez*, 349 So.2d 829 (Fla. 3d DCA 1977) (explicitly finding the filing of a pure bill of discovery "viable in Florida," though not maintainable under the facts at bar); ADKINS & JONES, *Florida Civil and Criminal Discovery*, section 1–4 (2d ed 1976) (noting the availability of this avenue of relief despite the existence of Fla.R. Civ.P. 1.350).

The general requirements of a bill of discovery are as follows:

> The complaint must show that the disclosure of facts which it seeks is necessary to enable the plaintiff to maintain his cause of action or defense in a suit pending or about to be brought in another court, and that the cause of action or defense is legally sufficient. Discovery cannot be had of facts material only to the cause of action or defense of the adverse party, nor where the facts, if disclosed, would not support a cause of action or defense at law. The complaint must also show a present interest of both the plaintiff and defendant in the subject matter, for such a complaint cannot be maintained by a stranger or against a witness. The particular matters as to which discovery is sought must, of course, be set out clearly and definitely.

ADKINS & JONES, *supra*, at 10 (citing *First National Bank*).

The viability of the bill is further supported by Fed.R.Civ.P. 34(c), on which the analogous Florida rule of Discovery is based, and which provides "This rule does not preclude an independent action against a person not a party for production of documents and things and permission to enter upon land." The applicable Advisory Committee notes clearly state that this rule was not intended to preempt equitable bills in discovery.

For the purposes of this Motion to Remand, the Court will treat the bill as a distinct Florida proceeding in determining whether it has subject matter jurisdiction over this case. The Court need not reach the merits of whether the Bill will survive a Motion to Dismiss, but seeks to determine whether it has jurisdiction over the matter in the first instance.

The Plaintiff lists several potential claims to which it contends the discovery sought in the bill would be relevant and critical. Inasmuch as the Florida cases discussing this proceeding note that the bill's purpose is to enable a putative or current plaintiff to ascertain the nature of the claims which it is entitled to assert, and the Defendants against whom it may assert them, the Court will not read the listing of potential claims as exclusive. The complaint sets forth facts generally demonstrating that the Plaintiff may have been wronged by several or all of the Defendants under federal antitrust law and state law theories sounding in antitrust, interference with existing and prospective advantageous business relationships and/or contracts, breaches of fiduciary duty and the duty to act in good faith, and perhaps, though not explicitly alleged, civil conspiracy.

The Defendants assert that Florida law only allows a party to maintain a bill of discovery against a putative defendant and, therefore, because Plaintiff has asserted no potential claims against Defendants Perris and GEPMC, they are improperly joined. This is a gross overstatement of Florida law and internally inconsistent with the purpose of the bill—to ascertain, as a matter of equity who an injured party may sue and under what theory.

Although the Defendants have cited limited Florida cases which suggests that only putative Defendants may be named in a bill of discovery, the Court is of the opinion that such a restrictive reading is unwarranted and irreconcilable with the notion of removal of a Bill of Discovery. Moreover, it is an attempt to force the Court to entertain the viability of the Bill on its merits as if this were a Motion to Dismiss. It is absurd to argue the concept of fraudulent joinder as to defendants that are clearly related to the transactions underlying this

case within a proceeding the legitimate purpose of which is to discover the identity of the proper defendants for an independent lawsuit wherein the Plaintiff will seek actual relief. To the extent, if at all, that Florida case law is unclear on this matter, on a Motion for Remand, the Court is to resolve the uncertainty in favor of the Plaintiff's original choice of forum and to remand the case. *See B., Inc. v. Miller Brewing Co.*, 663 F.2d 545 (5th Cir.1981). In the case at bar, Florida law supports the inclusion of all of the named parties as Defendants in a Bill of Discovery.

In a Motion for Remand on the basis of fraudulent joinder, that is the "sham" inclusion of in-state defendants solely to deprive the court of diversity jurisdiction, the Defendant bears a heavy burden of proving that Defendants alleged to be in-state are actually diverse and that indisputably non-diverse Defendants were fraudulently joined solely to deprive the Court of Diversity Jurisdiction. *See Id.*

■ When a Plaintiff challenges the removal of his state court action on the basis of diversity of citizenship, the removing Defendants must establish that no properly joined defendant is a citizen of the Plaintiff's state. *See B., Inc. v. Miller Brewing Co.*, 663 F.2d 545 (5th Cir. Unit A Dec. 10, 1981); *Birmingham Post Co. v. Brown*, 217 F.2d 127 (5th Cir.1954); *see also Village Fair Shopping Co. v. Sam Broadhead Trust*, 588 F.2d 431 (5th Cir.1979). It is beyond dispute that Alan Perris and WBC are Florida Defendants.

The former Fifth Circuit further noted in *B., Inc. v. Miller Brewing Co*, that the burden of persuasion on a defendant claiming fraudulent joinder is heavy: he must show that there is *no possibility* that the plaintiff would be able to recover against the in-state defendant in state court. 663 F.2d at 549. A district court, in ruling on a Motion for Remand, must "evaluate all factual allegations in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff ... Moreover, the district court must resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff." *Id.* (citations omitted). If there is even a *possibility* that a state court would find a cause of action had been properly stated against any of the in-state defendants, the case must be remanded. *Id.* at 550.

Significantly, what this Court has before it is the issue of whether a Florida Court possibly would entertain a bill of discovery against either Defendants Perris or WBC.[3] The Court is not to reach the merits of the underlying claim; rather, there is one question to be answered: Does the Court have jurisdiction? The Court concludes that the answer is negative as it is possible that a Florida state court would entertain a bill of discovery against at least one, if not both of the in-state Defendants.

The complaint lists facts alleging that the Plaintiff may have been wronged by several or all of the Defendants under federal antitrust law[4] and state law theories

---

3. Because the Court concludes that there is a possibility that an action may be maintainable under Florida law as against either of the two irrefutably Florida Defendants, it is not necessary for the Court to address the citizenship of GEPMC, Inc., at this point in time. Both Perris and WBC, one may infer, were more than passive witnesses to the transactions that are potentially at issue. They, as much as or more than any other Defendant may have critical information that the Plaintiff seeks. Moreover, both Defendants have an interest in the subject matter of the litigation. Accordingly, if there is the possibility of maintaining a state court action under Florida law, the action must be dismissed for lack of complete diversity and resolved in the appropriate forum. The citizenship of Defendant GEPMC, Inc., is therefore, prematurely raised.

4. *See* 15 U.S.C. sections 1–7, 19; *In re Plywood Antitrust Litigation*, 655 F.2d 627 (5th Cir.1981), *reh'g denied*, 663 F.2d 101, *cert. dismissed*, 462 U.S. 1125, 103 S.Ct. 3100, 77 L.Ed.2d 1358 (1983) (conspiracy to fix prices illegal under act); *United States v. Flom*, 558 F.2d 1179 (5th Cir.1977) (violative for two firms to submit collusive, non-competitive bids); *Southern Concrete Co. v. U.S. Steel Corp.*, 535 F.2d 313 (5th Cir.1976), *cert. denied*, 429 U.S. 1096, 97 S.Ct. 1113, 51 L.Ed.2d 543 (reciprocal dealing involving the use of buying power to secure competitive advantage between two parties of equal footing); *see also Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984) (coordinated activity of a parent and its wholly owned subsidiary must be viewed as that of a single enterprise for antitrust analysis).

sounding in antitrust,[5] interference with existing and prospective advantageous business relationships and/or contracts,[6] breaches of fiduciary duty and the duty to act in good faith,[7] and perhaps, though not explicitly alleged, civil conspiracy.[8]

5. *See Fla. Stat Ann.* section 542.32 (1988) (in construing Florida's antitrust chapter, great weight should be given to the interpretation of analogous provisions of the comparable federal antitrust statutes).

6. From the facts alleged in the complaint, it appears that the Plaintiff and NBC were either partners or joint venturers. In any case, their relationship is alleged to have been as follows, quoting paragraphs 16, 17 & 23 of the Complaint:

16. Plaintiff Sunbeam has been affiliated with Defendant NBC since 1962 under a series of affiliation contracts. Plaintiff Sunbeam has invested substantial sums of money in its relationship with NBC in the reasonable expectation that the relationship would continue. Sunbeam has permitted the use of its facilities and personnel by NBC on numerous occasions and has entered into a joint investment with NBC satellite transmission facilities.

17. The affiliation contracts between Plaintiff Sunbeam and Defendant NBC are written in such a way that the financial and economic success of each party is dependent upon the skill, efforts and good faith of the other party. The contracts provide that both parties will share the profits and the losses generated by the broadcasting of NBC programming in South Florida. Under these contracts, the business of broadcasting NBC programming in South Florida is carried on as a partnership or joint venture between Sunbeam and NBC.

\* \* \* \* \* \*

23. The most recent affiliation contract between WSVN and Defendant NBC first became effective on January 1, 1981 and has a term of two years. The contract provides that it will be renewed automatically for additional two-year periods unless either party notifies the other to the contrary at least 180 days prior to the expiration of the term. WSVN's affiliation with Defendant NBC was renewed most recently on January 1, 1987 and runs until January 1, 1989. NBC has given the Plaintiff adequate written notice that the affiliation is to terminate as of January 1, 1989. Thus, WSVN will be unaffiliated for the first time since it began its 25 year relationship with NBC.

The agreement was terminable at will by either party upon compliance with the notice provisions. Although this would ordinarily afford a competitor a defense to the tort of interference with contract, it is possible that a Florida court would require that the competitive means

Accordingly, the Court concludes that none of the Florida Defendants were fraudulently joined. All of the Defendants have an interest in this matter or are agents of those holding an actual interest. *See First National Bank of Miami,* 171 So. at 511. All of the Defendants may reasonably be

of inducing the termination (or, in this case, the "notice of non-renewal") to be non-tortious in and of itself. Therefore, to the extent that NBC *unlawfully conspired* with CBS, GEPMC, WBC and/or Alan Perris to induce NBC to terminate its contractual relationship with the Plaintiff, the defense is inapplicable. *See, e.g., Miami Laundry Co. v. Sanitary Linen Service Co.,* 131 So.2d 519, 520 (Fla. 3d DCA 1961). Thus, the circumstances surrounding its decision to terminate the affiliation contract and the identity and motives of those involved are highly material; *see also Manufacturing Research Corp. v. Greenlee Tool Co.,* 693 F.2d 1037 (11th Cir.1982). Similarly, the Court is of the opinion that a Florida Court might entertain the Bill as to one or all of the Florida Defendants under the theory that they might have facts and documents critical to the Plaintiff's formulation of a claim for tortious interference with the Plaintiff's 25 year old business relationship with NBC. *Cf. Ahern v. Boeing Co.,* 701 F.2d 142 (11th Cir. 1983).

7. Whether the Plaintiff and Defendant's relationship was one of partnership or joint venture is immaterial. Under the facts as alleged, it appears that the parties' relationship gave rise to certain fiduciary duties under Florida law. Thus, NBC and its agents (which could possibly include WBC, GEPMC, or Alan Perris) owed the Plaintiff the duty to act in good faith and to refrain from unfair dealing with respect to the Plaintiff. *See Gosett v. St. Paul Fire & Marine Insurance Co.,* 427 So.2d 386 (Fla. 4th DCA 1983). Certainly, the Complaint alleges facts sufficient to justify the Bill of Discovery, if not sufficient to state a cause of action, against NBC and possibly against one of the two admitted in-state defendants, and perhaps against GEPMC under this theory as well.

8. Under the facts as alleged, the complaint suggests that some or all of the named Defendants, *inter alia,* may have conspired to interfere with the Plaintiff's relationship with NBC. Moreover, under the facts as alleged and due to the realities of the national broadcasting market, the Defendants, acting in unison, were able to exert strong economic coercion, ultimately to the detriment of the Plaintiff. A Florida Court might view this scenario, independent of the existence of any other tort, as an actionable civil conspiracy. *See Margolin v. Morton F. Plant Hospital Ass'n, Inc.,* 342 So.2d 1090 (Fla. 2d DCA 1977). Clearly, however, this is a matter which falls within the ambit of Florida's equitable Bill of Discovery.

presumed to have been so involved in the transaction as to have knowledge of facts or access to documents which are critical to the Plaintiff's potential claims and which the Plaintiff may not otherwise obtain. The Plaintiff has alleged sufficient facts to show that it seeks information and documents that are necessary to enable it to institute a legally cognizable action in the proper forum against the proper parties. This is particularly so in the case at bar where the intercorporate and intracorporate relationships between the named Defendants, and their named or thus far unnamed parents and/or subsidiaries are so complex. Moreover, the Court finds that the particular matters as to which discovery is sought have been set out clearly and definitely.

### (B) Lack of Federal Question

 The Defendants further argue for removal by claiming that if one of the ultimate objects of the state law discovery proceeding is to facilitate the prosecution of an action over which a Federal Court has exclusive jurisdiction, then the Federal Court has jurisdiction over the discovery proceeding itself. The argument is not well taken. Florida has defined this proceeding as distinct from the matters as to which the Plaintiff seeks discovery. Upon answering the Bill, the proceeding terminates. A subsequent suit for relief is an entirely separate proceeding.

Moreover, the state court is the most competent court to limit the scope of discovery to which the Plaintiff is entitled in accordance with Florida law. Thus, the Defendants' argument that this proceeding will turn into a fishing expedition is unmerited. The Florida proceeding, to the extent that it is available under state law, exists for a specific purpose—to enable a Plaintiff to determine the proper parties against whom, and the proper legal theories under which, to proceed in a separate action for relief. Thus, the scope of discovery to which the Plaintiff is entitled under Florida law is presumably relatively narrow. Notwithstanding that the Plaintiff has alleged that it may seek recovery under federal antitrust statutes, the Court is of the opin-

ion that the discovery contemplated by Florida law in the context of this Bill is far more narrow than that which the Plaintiff will ultimately require in a subsequent action for relief under this theory, should the Plaintiff ultimately choose to assert it. Therefore, the Court is not persuaded by the Defendants' argument that the Florida proceeding will circumvent federal discovery limitations in the context of a cause of action exclusively a matter of federal jurisdiction.

The present complaint states an actual and present claim for discovery against the Defendants under state law. Subsequent to Remand, should the Plaintiff discover what it seeks, it may decide to file a federal claim. Not until then will this Court have subject matter jurisdiction over this proceeding. As a corollary, should the Plaintiff seek relief under federal law in state court, the Defendants shall have, at that time, the right to remove the action to federal court. Accordingly, it is hereby

ORDERED AND ADJUDGED that this Motion to Remand is GRANTED.