JUSTICE TRIEWEILER
dissenting:
I dissent from the opinion of the majority.
The unfortunate employee in this case is seriously injured and caught in a maze of corporate unaccountability. Chevron, under one corporate name, owned the mining operation where he worked. Chevron, under another corporate name, managed the mining site. Chevron, under a third corporate name, employed him. He does not know how he was injured, he does not know why he was injured, and he does not know which form of Chevron was responsible for making the place of his injury a safe place to work.
For years, courts in this state and all over the country have been trying to discourage attorneys from filing frivolous complaints for damages without a factual basis. We have even adopted Rule 11 so that we can punish those who do. Now this Court has recognized a cause of action known as an equitable bill of discovery so that *466 information beyond a person’s grasp can be made available when necessary. Any reasonable mind would conclude that the circumstances in this case are the exact circumstances for which an equitable bill of discovery is appropriate. However, that logic has apparently escaped the majority.
The majority opinion is also unfaithful to the authorities upon which it is based. It is correct that equitable bills of discovery were allowed in both Shorey v. Lincoln Pulp & Paper Co., Inc. (Me. 1986), 511 A.2d 1076, and Lubrin v. Hess Oil Virgin Islands Corp. (D.V.I. 1986), 109 F.R.D. 403. However, it is not correct that those results were premised on the fact that the defendants in those cases were employers who could not be sued for damages. Nor is it correct that the results in those cases were premised on the fact that only limited discovery was sought.
The rationale upon which the Lubrin decision was based applies directly to the circumstances in this case. In permitting the requested discovery, the Federal District Court in that case explained the plaintiff’s dilemma as follows:
It appears that, Lubrin will be unable to determine the manufacturer or supplier of the BTX cargo manifold and tank without HOVIC’s assistance. Since that assistance is not forthcoming, Lubrin is placed in a precarious position. Stated concisely, Lubrin must force a non-party in an anticipated tort suit to supply him with information he needs for determining whether a third-party may be liable for his injuries. Lubrin brought this action for the specific purpose of conducting this type of discovery. For the following reasons we find this tactic proper and will order an expedited discovery schedule.
Lubrin, 109 F.R.D. at 404.
In explaining its decision, the Federal District Court stated:
We note that a number of District Courts have reached the same conclusion and have recognized that rule 34(c), although not authorizing a court to order discovery of a nonparty, does not prohibit an independent action to obtain discovery. Reilly Tar Corp. v. Burlington N.R. Co., 589 F.Supp. 275, 278-79 (D.Minn. 1984) (case dismissed for lack of jurisdiction, however, the court was of the opinion that ancillary jurisdiction may properly be exercised in a discovery action seeking inspection of a nonparty’s land if the facts of a particular case so warrant); Wimes v. Eaton Corp., 573 F.Supp. 331 (E.D.Wis. 1983); Huynh v. Werke, 90 F.R.D. 447, 450 (S.D.Ohio 1981); Home Ins. Co. v. First Nat. Bank, 89 F.R.D. 485, *467 (N.D.Ga. 1980). Most of these courts have characterized this independent action as similar to the antiquated instrument called an equitable bill of discovery. Reilly Tar Corp., at 278; Wimes, at 333-34; Home Ins. Co., at 488-89. This mechanism was used as the primary means of discovery prior to the advent of the Federal Rules of Civil Procedure in 1938. Wimes, 573 F.Supp. at 333-34. Although Lubrin did not style his complaint as an equitable bill for discovery, he does request equitable injunctive relief seeking the equivalent result. We therefore find our result in accordance with the few decisions which exist on this subject.
Lubrin, 109 F.R.D. at 405.
The defendant in Lubrin happened to be the plaintiff’s employer and could not be sued for damages. However, nothing in that opinion can be interpreted to suggest that the court’s conclusion was based upon the employer’s immunity from suit. The result was based upon the plaintiff’s inability to obtain the necessary information without filing an equitable bill of discovery.
Everything said about the Lubrin decision is equally true for the Shorey decision. Nowhere in its decision did the Maine court suggest that its result was premised on the employer’s immunity from suit. The Maine court very clearly stated that equitable bills of discovery are appropriate “when effective discovery cannot otherwise be obtained and the ends of justice are served.” Shorey, 511 A.2d at 1078.
Furthermore, the majority completely ignores numerous other decisions where equitable bills of discovery have been recognized in situations where the defendant was someone other than an employer. In Sunbeam Television v. Columbia Broadcasting System (S.D.Fla. 1988), 694 F. Supp. 889, the court held that an equitable bill of discovery would be permitted under Florida law when brought by the owner of a television station against a national network. Interestingly, in that case:
The Defendants assert that Florida law only allows a party to maintain a bill of discovery against a putative defendant and, therefore, because Plaintiff has asserted no potential claims against Defendants Perris and GEPMC, they are improperly joined.
Sunbeam, 694 F. Supp at 892.
The district court in that case responded that:
This is a gross overstatement of Florida law and internally incon *468 sistent with the purpose of the bill — to ascertain, as a matter of equity who an injured party may sue and under what theory.
Sunbeam, 694 F. Supp at 892.
In Wolfe v. Massachusetts Port Authority (Mass. 1974), 319 N.E.2d 423, the Massachusetts Supreme Judicial Court allowed a motorist to file an equitable bill of discovery against the port authority to discover toll receipts gathered at a toll bridge.
In Investors Mortgage Insurance Co. v. Dykema (1984), 598 F. Supp. 666, the United States District Court for the District of Oregon allowed an equitable bill of discovery brought by a mortgage insurance company which sought entry upon two mortgagors’ property for the purpose of performing an appraisal. Interestingly, that case is also the only reported case where the party from whom discovery was sought objected on privacy grounds similar to those about which the majority expresses concern. However, in that case, the district court disposed of the privacy argument with the following conclusion:
Investors contends that the appraisals it seeks are vital to the outcome of the main action in this matter and cannot be obtained by any other means. The Dykemas and the Nielsens do not contest these allegations, but request that the court deny the relief sought on the basis that it would violate their right to privacy. While the constitution protects individuals from unwarranted intrusion into their homes, that protection is not without its limits and needs to be balanced with Investors’ right of access to the courts. The harm to these defendants in allowing an appraisal is minimal. The right of Investors to a full-blown hearing with all the facts is an essential part of full access to the courts and outweighs the Dykemas’ and Nielsens’ claims of privacy.
Investors, 598 F. Supp at 669.
The great majority of jurisdictions which have considered whether to allow an equitable bill of discovery have permitted it. Of those jurisdictions where an equitable bill of discovery is allowed, this Court has placed greater limitations on its use than any other jurisdiction I have found.
The majority’s reasons for those limitations have no practical basis in the real world.
In addition to limiting equitable bills of discovery to parties who cannot be later made a defendant, the majority has placed the following additional limitations on this cause of action:
*469 1. The discovery is limited to names and addresses of potential defendants and on-site visits; and
2. The pleading commencing the action must show that prior request has been made.
Just how do you ask the defendant in an equitable bill of discovery for the names and addresses of potential defendants?
Surely any justice who thinks that a practical response would come from that kind of request has never participated in litigation where discovery was sought. This is a particularly impractical suggestion when the employer from whom discovery will be sought is simply one form of several interrelated corporations, one or more of whom may have been the party responsible for the plaintiffs injuries. Does the majority really think that one of these interrelated corporations is going to identify one of its sister corporations in response to a request for the identity of potential defendants in a lawsuit for damages?
Why should equitable bills of discovery be limited to on-site visits? Simply because that is the type of discovery that was sought in two of the cases which are relied on as authority for allowing an equitable bill of discovery? This limitation makes no sense. Other cases cited in this dissent allowed discovery of other types of information. The purpose of the bill of discovery is to enable a plaintiff to obtain relevant information which would otherwise be beyond his control. There is no rational basis for distinguishing one type of relevant information from another type of relevant information. Why is it more appropriate to allow him to visit an accident site than to see a copy of an accident investigation report which may explain the cause for his accident? This distinction makes no sense.
What practical purpose does it serve to require the plaintiff to allege that before filing his equitable bill of discovery he made a request that the defendant produce the information which is sought? The equitable bill of discovery is itself a request for that information. It includes a prayer for relief. The prayer for relief in this case sought copies of any investigative reports prepared by the defendants as a result of the plaintiff’s accident; records which would describe the relationship of the various defendants with regard to the operation of the Stillwater Mine; and any information in the defendants’ possession which would identify the manufacturer, distributor, and owners of the cars and engine which formed the train that ran over the plaintiff. This complaint was served on all of the defendants. They could have brought a complete and abrupt end to this litigation by simply providing the information which was requested. If they had *470 provided the information, it would have been a complete defense to the plaintiff’s bill of discovery. To require the plaintiff to make a request for the material before this written request for the material exalts form over substance and imposes a meaningless, practical hurdle which provides absolutely no benefit to anyone.
The majority states in its opinion that, “[h]ere, it appears from responses by Mr. Temple’s counsel during oral argument that little or no inquiry was made prior to filing the equitable action ....”
I disagree with that characterization of remarks made during oral argument. Furthermore, there is absolutely nothing in this record to indicate what efforts the plaintiff did or did not make prior to filing this complaint. What we do know, is that in his complaint plaintiff alleged that the information which is necessary to his investigation is in the exclusive control of the defendants. For purposes of ruling on a motion made pursuant to Rule 12(b)(6), M.R.Civ.P., we assume those facts alleged in the complaint are true. Mogan v. City of Harlem (1987), 227 Mont. 435, 437, 739 P.2d 491, 492. If those facts are true, then no amount of inquiry short of that which was sought by the plaintiff’s complaint would discover those facts.
It is also incredible that the majority would suggest that its decision is justified based on the protection of constitutional rights. As pointed out previously, the only court to consider this issue in a constitutional context has found that an equitable bill of discovery does not violate a constitutional right to privacy. However, the majority’s constitutional rationale is particularly suspect.
The majority opinion concludes that it might offend the constitution for the plaintiff to file a petition for discovery and ask Chevron (in any of its several forms) for information about his accident. However, it also concludes that if he amended that petition and called it a complaint for damages by making some phony allegation that he believed the defendants were responsible for his damages, he could discover the very same information. What would be the constitutionally significant difference under those two circumstances? In both cases, the defendant is represented by counsel. In both cases, discovery is subject to the same rules of civil procedure. And in both cases, the defendant is afforded protection from the District Court where the discovery sought is unlikely to lead to the development of relevant information. I congratulate the majority on their sudden constitutional convictions. I question their elevation of Chevron’s right to be free from minor inconvenience to a place of greater constitutional importance than the plaintiff’s right of access to this *471 State’s courts. Furthermore, if the majority was going to take this step it should have come up with better precedent than some loose language in a 49-year-old case that is admittedly not on point.
The foregoing comments relate to the injustice of this decision as it pertains to the plaintiff. However, the majority opinion is an equally significant disservice to responsible practitioners in this State. Rule 11, M.R.Civ.P., clearly provides that when an attorney signs a complaint he certifies that based upon a reasonable inquiry he has a belief that the complaint is well-grounded in fact. If it turns out that after signing such a certification, he has no information which would justify such a belief, both he and the person he represents are subject to substantial sanctions. If we are going to restore respect for our adversary system and the legal profession, we need to strictly enforce Rule 11, and not suggest that it is really meaningless.
In this case, the plaintiff has alleged in his complaint and his affidavit that he does not know how his accident happened, he does not know which of several interrelated corporations were responsible for providing him a safe place to work, and he does not know who was responsible for manufacturing and operating the train which ran over him. Furthermore, he has alleged that the defendants are in the exclusive control of that information. If, as we must assume, the defendants are in exclusive control of that information, and if the plaintiff is precluded from obtaining that information because of this decision, then how can he allege, without the benefit of this discovery, that after reasonable inquiry he knows that one of the defendants was responsible for his injuries. In language that defies reason, the majority suggests that there is a new form of complaint known as a “knowledge, information, and belief’ complaint filed “after reasonable inquiry.” If there is no factual basis known to the plaintiff for filing a complaint, what is a “knowledge, information, and belief’ complaint? This incredible word game engaged in by the majority totally eliminates Rule 11 as any meaningful deterrent to frivolous complaints. This opinion invites abuse of the judicial process and punishes the responsible actions taken by the plaintiff’s attorneys in this case. The majority suggests that “fictitious ‘Doe’ pleading also is available to save meritorious causes of action where, despite reasonable diligence, the actual identity of culpable parties remains unknown or uncertain.” That suggestion overlooks the fact that the plaintiff in this case does not know whether there is a meritorious cause of action, nor whether there are any culpable parties. All that the plaintiff does know is that one of several related forms of the *472 Chevron companies, or their partner, has exclusive control of the information which would enable him to determine whether he has a cause of action. Afictitious “Doe” pleading has absolutely no relevancy to the circumstances in this case.
The majority opinion uses terms like “knowledge, information, and belief’ complaint, and fictitious “Doe” pleading in totally inappropriate ways. The former will now surely show up in future cases as if it actually meant something. Those cases will probably result when these same corporate defendants successfully seek the imposition of sanctions on the first plaintiff who relies on this new kind of pleading. The latter was never intended for circumstances such as exist in this case, and will surely cause some unsuspecting attorney’s misfortune if he or she relies on the misguided advice of the majority opinion.
By encouraging people in the plaintiff’s position to make uninformed allegations of wrongdoing just so that they can gather information that ought to be given to them as a matter of common decency, this Court has forfeited the moral authority to sanction anyone in this state for violations of Rule 11. That is indeed an unfortunate situation which will poorly serve both the legal profession and the judiciary in the future.
For these reasons, I dissent from the opinion of the majority.
JUSTICE HUNT joins in the foregoing dissent of JUSTICE TRIEWEILER.