[No. 22737-1-II.    Division Two.    March 12, 1999.]

APA—THE ENGINEERED WOOD ASSOCIATION, *Appellant*, v.
GLENS FALLS INSURANCE COMPANY, INC., ET AL.,
*Respondents*.

*Guy J. Sternal, Barry A. Johnsrud,* and *Amy C. Lewis* of
*Eisenhower & Carlson,* for appellant.

*Stuart C. Campbell, Margaret A. Sundberg,* and *Douglas
A. Hofmann* of *Williams, Kastner & Gibbs, P.L.L.C.,* for
respondents.

MORGAN, J. — The American Plywood Association (APA)[1] seeks to recover about $400,000 in defense costs from its comprehensive general liability carrier, Glens Falls Insurance Company.[2] The trial court granted summary judgment in favor of Glens Falls. We reverse and remand.

The Federal Rules of Civil Procedure were adopted in 1938. Before then, "the equitable bill of discovery was the primary means of discovery . . . ."[3] Since then, jurisdictions have split on "whether modern rules of civil procedure totally supersede the equitable bill of discovery."[4]

The jurisdiction pertinent here is Florida. Its civil rules "do not extinguish the long-standing and distinct right to file a Bill of Discovery in equity."[5] Accordingly, a Florida plaintiff may file a complaint, called a pure bill of discovery, that "seek[s] nothing more than otherwise unavailable information necessary to enable the Plaintiff to continue in the prosecution of, or to institute a suit for relief under a cognizable theory against the appropriate defendants."[6] Such a complaint "enable[s] a putative or current plaintiff to ascertain the nature of the claims which it is entitled to

---

[1]The APA is now known as the Engineered Wood Association. For convenience, we refer to it by its former name.

[2]Glens Falls is affiliated with various other entities, including CNA Insurance Companies, Inc. For convenience, we refer only to Glens Falls.

[3]*Temple v. Chevron U.S.A. Inc.*, 254 Mont. 455, 458, 840 P.2d 561, 563 (1992).

[4]*Id.* at 563.

[5]*Sunbeam Television Corp. v. Columbia Broad. Sys., Inc.*, 694 F. Supp. 889, 891-92 (S.D. Fla. 1988).

[6]*Id.*

assert, and the Defendants against whom it may assert them.'"[7]

When a pure bill of discovery is filed in Florida, "the complaint must show that the disclosure of facts which it seeks is necessary to enable the plaintiff to maintain his cause of action or defense in a suit pending or about to be brought in another court, and that the cause of action or defense is legally sufficient."[8] "Discovery cannot be had . . . where the facts, if disclosed, would not support a cause of action or defense at law."[9]

Assuming a pure bill of discovery is otherwise sufficient under Florida law, it may later be amended to pray for relief other than discovery. Thus, one Florida court has said:

> [T]he Florida Rules of Civil Procedure mandate, "[t]here shall be one form of action to be known as 'civil action.'" Fla.R.Civ.P. 1.040. The mere fact that a complaint is called a Pure Bill of Discovery does not mean that it cannot be amended to allege a statutory cause of action. *See McSwiggan v. Edson*, 186 So.2d 13 (Fla.1966) (where an amended pleading asserts claims arising out of the same act on which the original pleading is founded, the amended pleading will not be regarded as a new cause of action). Furthermore, "[l]eave of court [to amend] shall be given freely when justice so requires." Fla.R.Civ.P. 1.190(a).[10]

In 1992, APA was insured under a comprehensive general liability policy issued by Glens Falls. The policy stated in part:

> We [Glens Falls] will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.

---

[7]*Id.* at 892.

[8]*Id.* at 891-92.

[9]*Id.*

[10]*Surface v. Town of Bay Harbor Islands*, 625 So. 2d 109, 109 (Fla. 1993).

We will have the right and duty to defend any "suit" seeking those damages.[11]

The policy's "coverage territory" included the United States, Canada, and, under some circumstances, the world.

In August 1992, Hurricane Andrew struck southern Florida. It tore the roofs off many houses. As a result, Prudential Property and Casualty Company became obligated to make, and did make, substantial payments for property damage to many of its insureds.

In September 1993, Prudential sued APA in Florida. Prudential labeled its complaint "a pure bill in equity for discovery of facts within [APA's] knowledge and discovery of documents, writings and other tangible items . . . essential to aid in the prosecution of an action at law to be commenced by Plaintiff against [APA] and possibly others."[12] Prudential alleged that many of the roofs damaged by Hurricane Andrew had been constructed with plywood sheathing; that APA "has for decades recommended a nailing pattern for fastening plywood sheathing to framing members of the roof using common nails"; that "widespread failures of [plywood] roofing systems resulted from the inability of fastening methods to withstand the reasonably foreseeable uplift forces of Hurricane Andrew"; and that it was seeking evidence to support "claims against the APA for negligence, and potentially against one or more of its members/manufacturers for negligence and strict liability."[13] In short, Prudential alleged that it was "contemplating the commencement of an action against [APA] and others" for negligence and strict liability, and that "the facts and documents sought through this equitable bill of discovery are essential to the prosecution of [the] contemplated action."[14]

---

[11]Clerk's Papers at 264.

[12]*Id.* at 19.

[13]*Id.* at 22-23.

[14]*Id.* at 24.

APA asked Glens Falls to defend Prudential's suit. Glens Falls refused. Relying on the policy language quoted above, Glens Falls claimed that its duty to defend was limited to suits "seeking damages," and that Prudential's suit was not a suit "seeking damages."

Over the next two years, Prudential and APA engaged in extensive discovery proceedings. During that time, according to APA, APA produced 200,000 documents and incurred over $400,000 in attorney fees.

When discovery was complete, Prudential decided not to proceed with its "contemplated action" against APA.[15] Thus, it never amended its pure bill of discovery, and it never proved that APA was liable for damages caused by Hurricane Andrew.

In May 1996, APA sued Glens Falls for the attorney fees it had incurred to defend itself against Prudential's "pure bill of discovery." Glens Falls moved for summary judgment, and the trial court granted the motion. APA then filed this appeal, which is governed by Washington law.[16]

We begin with three preliminary observations. First, Glens Falls does not dispute that Prudential's Florida action was a "suit" within the meaning of the policy language quoted above. After the APA briefed that question, Glens Falls responded only that Prudential's action was not a suit "seeking damages."[17]

Second, Glens Falls does not dispute that Prudential's suit alleged facts which, if proved *and accompanied by a prayer for damages*, would have supported damages. When arguing its motion for summary judgment before the trial court, Glens Falls stated:

> But if one reads the pure bill of discovery, which is a method

[15]Clerk's Papers at 24.

[16]No one contends that Florida law governs the dispute between Glens Falls and APA, as opposed to the dispute between Prudential and the APA. *See Rice v. Dow Chem. Co.*, 124 Wn.2d 205, 208-09, 875 P.2d 1213 (1994); CR 9(k)(1). The APA is headquartered in Washington.

[17]Appellant's Br. at 13-18.

of getting documents in Florida, it does not seek money damages. It only seeks documents.

If that pure bill of discovery, anywhere in it, had said we seek a judgment for money damages because of what happened—there was something that APA did—we would not be here now. . . . [18]

Third, Prudential was seeking discovery so it could determine whether to pray for damages. It alleged in its complaint that it was contemplating claims for property damage based on APA's negligence and strict liability, and it is obvious that damages would have been the remedy for such claims.

The narrow question, then, is whether a claimant's suit for discovery, prefatory to seeking damages but not yet praying for damages, should be characterized as a suit "seeking damages" within the meaning of the policy language quoted above.[19] Our answer is yes.

■ As a general rule, an insurer who has employed policy language like that in issue here must defend any complaint that alleges facts which, if proved, would render the insurer liable.[20] Thus, "the duty to defend hinges not on the insured's potential liability to the claimant, but rather on whether the complaint contains any factual al-

---

[18]Report of Proceedings at 6-7.

[19]The Washington cases most heavily relied on by Glens Falls, *Seaboard Sur. Co. v. Ralph Williams' N.W. Chrysler Plymouth, Inc.*, 81 Wn.2d 740, 504 P.2d 1139 (1973) and *Felice v. St. Paul Fire & Marine Ins. Co.*, 42 Wn. App. 352, 353, 711 P.2d 1066 (1985), *review denied*, 105 Wn.2d 1014 (1986), do not help with this question. In *Seaboard*, the claimant sought to enjoin an insured business from competing unfairly. In *Felice*, the claimant sought to remove an insured attorney from his position as guardian. In neither case did the claimant bring a suit which, if pursued, would have resulted in damages.

[20]*Kirk v. Mt. Airy Ins. Co.*, 134 Wn.2d 558, 561, 951 P.2d 1124 (1998); *State Farm Gen. Ins. Co. v. Emerson*, 102 Wn.2d 477, 486, 687 P.2d 1139 (1984); *Seaboard Sur.*, 81 Wn.2d at 741; *Aetna Cas. v. M&S Indus., Inc.*, 64 Wn. App. 916, 927, 827 P.2d 321 (1992).

legations rendering the insurer liable to the insured under the policy."[21]

When deciding whether a complaint alleges facts which, if proved, would render the insured liable, we view the complaint liberally. As this court has said, "[t]he pleadings must be liberally construed, and if they are subject to an interpretation that creates a duty to defend, the insurer must comply with that duty."[22]

When deciding whether a complaint alleges facts which, if proved, would render the insured liable, we attempt to elevate substance over form. As the Supreme Court has said, "coverage does not hinge on the form of action taken or the nature of relief sought, but on an actual or threatened use of legal process to coerce payment or conduct by a policyholder."[23]

■■ Applying these principles here, we think that Prudential's suit was a suit "seeking damages" within the meaning of the policy language quoted above. In jurisdictions that do not use bills of discovery, Prudential's suit would simply have been the first stage in a suit seeking damages, and its complaint would have prayed for damages from the outset. Even in Florida, which uses bills of discovery, Prudential could easily have amended its complaint to add a prayer for damages, if and when it deemed its discovery efforts successful. To hold that Prudential's suit was not a suit seeking damages would accentuate the vagaries of Florida procedure, exalt form over substance,

---

[21]*Emerson*, 102 Wn.2d at 486; 7C JOHN ALAN APPLEMAN, INSURANCE LAW AND PRACTICE § 4683.1 at 60 (Walter F. Berdal ed. 1979).

[22]*M&S Indus.*, 64 Wn. App. at 928; *Prudential Property & Cas. Ins. Co. v. Lawrence*, 45 Wn. App. 111, 115, 724 P.2d 418 (1986); *R.A. Hanson Co. v. Aetna Cas. & Sur. Co.*, 26 Wn. App. 290, 294, 612 P.2d 456 (1980); APPLEMAN § 4683 at 58 ("any doubt[s] as to the adequacy of the pleadings to bring the occurrence within the coverage of the liability policy are resolved in favor of the insured").

[23]*Boeing v. Aetna Cas. & Sur. Co.*, 113 Wn.2d 869, 878, 784 P.2d 507 (1990) (quoting *Fireman's Fund Ins. Cos. v. Ex-Cell-O Corp.*, 662 F. Supp. 71, 75 (E.D. Mich. 1987)).

and contravene the national scope of APA's policy.[24] We conclude that Prudential's suit should be viewed as the discovery stage of a suit seeking damages; that Glens Falls breached its duty to defend; and that Glens Falls must pay the fees and costs that APA reasonably incurred to defend itself against Prudential.[25] On remand, the superior court shall award APA its *Olympic S.S.* fees incurred in this action, at both the trial and appellate levels.[26]

Reversed and remanded for further proceedings.

BRIDGEWATER, C.J., and ARMSTRONG, J., concur.

Review denied at 138 Wn.2d 1023 (1999).

---

[24]APA's policy provided for a "coverage territory" that was nationwide and, in some instances, worldwide. If we were to rule that Prudential's bill of discovery was not equivalent to the discovery stage of a suit "seeking damages," we would, in effect, create a national crazy quilt in which discovery proceedings would be covered in some states, such as Washington, but not covered in other states, such as Florida. That we decline to do.

[25]*Kirk v. Mt. Airy Ins. Co.,* 134 Wn.2d 558, 563, 951 P.2d 1124 (1998); *Greer v. Northwestern Nat'l Ins. Co.,* 109 Wn.2d 191, 202, 743 P.2d 1244 (1987) (citing *Waite v. Aetna Cas. & Sur. Co.,* 77 Wn.2d 850, 856, 467 P.2d 847 (1970), and *Bosko v. Pitts & Still, Inc.,* 75 Wn.2d 856, 867, 454 P.2d 229 (1969)); *Smith v. Ohio Cas. Ins. Co.,* 37 Wn. App. 71, 75, 678 P.2d 829 (1984); *Travelers Ins. Cos. v. North Seattle Christian & Missionary Alliance,* 32 Wn. App. 836, 845-46, 650 P.2d 250 (1982). By mentioning damages in the nature of fees and costs, we neither include nor exclude other damages to which APA may be entitled.

[26]*Olympic S.S. Co. v. Centennial Ins. Co.,* 117 Wn.2d 37, 811 P.2d 673 (1991).